ROBERT C. BOEHM

*v.*

HENRY L. HERTZ *et al.*

*Opinion filed October 16, 1899.*

1. STATUTES—*when subject of act is sufficiently expressed in title.* The provisions of a statute are within its title when they relate to a particular subject indicated in the title, and are a part of or incident to it, or in some reasonable sense connected with or auxiliary to the object in view.

2. CONSTITUTIONAL LAW—*provisions of Appropriation act of 1897 to State Normal University are within its title.* The provisions of the act of 1897, (Laws of 1897, p. 79,) entitled "An act to make an appropriation for the ordinary and other expenses of the Illinois State Normal University at Normal, Illinois, and for the completion and equipment of its gymnasium building," are within the title of the act, and the act is therefore constitutional.

3. SAME—*when legislative determination of policy of State is conclusive.* Section 1 of article 8 of the constitution, requiring the General Assembly to provide a "thorough and efficient system of free schools," is a mandatory provision without restriction as to methods, and the legislative determination of the policy of the State in selecting its own agencies or instrumentalities for the purpose of carrying out such provision is conclusive.

4. SAME—*effect of contemporaneous legislative construction of constitutional provision.* Uniform, continued and contemporaneous construction given by the legislature to a 'constitutional provision, and generally recognized as its meaning or intention, affords a strong presumption that such construction is correct.

5. SAME—*appropriation act of 1897 to State Normal University is constitutional.* The provision of section 20 of article 4 of the constitution, that the State shall never pay, assume or become responsible for the debt of, or loan or extend its credit to, any public or other corporation, does not prevent the State from appropriating money to defray the expenses and complete buildings of the private corporation known as the Illinois State Normal University, which before the adoption of the constitution was an agency of the State for the education of teachers, and appropriations may properly be made to continue it as such.*

CRAIG, J., dissenting.

*On the question of the public purposes for which money may be appropriated or raised by taxation there is a review of the authorities in a note to *Daggett* v. *Colgan,* (Cal.) 14 L. R. A. 474.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

GRANT FOREMAN, and JOHN C. WILSON, (LEWIS F. MASON, of counsel,) for plaintiff in error.

E. C. AKIN, Attorney General, (CHARLES L. CAPEN, C. A. HILL, and B. D. MONROE, of counsel,) for defendants in error.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

Plaintiff in error filed a bill in which it is alleged he is a tax-payer, etc., and that the General Assembly of the State of Illinois, on June 14, 1897, passed a certain act, in which it was attempted to appropriate moneys for the ordinary and other expenses of the Illinois State Normal University, alleged to be a private corporation organized under an act of the General Assembly of the State of Illinois passed February 18, 1857. It is alleged that the appropriation is unlawful and in contravention of the constitution of the State, because it would be a misappropriation of the public funds and a perversion thereof to the injury of the complainant. The bill made defendants, Henry L. Hertz, as State Treasurer, James S. McCullough, as State Auditor, and the board of education of the State of Illinois, and prayed for an injunction restraining the payment of any money by the board of education, attempted to be appropriated under the act of June 14, 1897. The service on the board of education was quashed, and thereupon the complainant, by his solicitors, dismissed the bill as to that defendant. The other two defendants appeared and filed their demurrer to said bill for want of equity, which was sustained and the bill dismissed. The complainant sued out this writ of error.

The constitutionality of an act entitled "An act to make an appropriation for the ordinary and other ex-

penses of the Illinois State Normal University at Normal, Illinois, and for the completion and equipment of its gymnasium building," approved June 14, 1897, is presented on this record.

Plaintiff in error claims that the act above mentioned violates that part of section 13 of article 4 of the constitution which provides: "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." We do not concur in this view. The act of June 14, 1897, is entitled "An act to make an appropriation for the ordinary and other expenses of the Illinois State Normal University at Normal, Illinois, and for the completion and equipment of its gymnasium building." The act appropriates, in addition to one-half of the interest of the college fund, the sum of $28,506.44 per annum for the expenses of the board of education, payment of salaries, etc., and makes further appropriations for the completion of the gymnasium building and for the proper heating and equipment of the same. It is the province of the legislature to determine the comprehensiveness of a statute, subject to the limitations prescribed by the constitution. Without the restriction of the constitutional limitation above provided, the legislature might include in a single act any subject which it saw proper to prescribe as to duties and provide as to punishments. The limitation of the above provisions of the constitution goes no further than to declare that no matters are properly included in the act which are not germane to its title. Where all the provisions of the act relate to a particular subject indicated in its title, and are a part of or incident to it or in some reasonable sense connected with or auxiliary to the object in view, it can not be held such provisions are not within the title of the act. It was held in *Ritchie* v. *People,* 155 Ill. 98, (on p. 120):

"All matters are properly included in the act which are germane to the title. The constitution is obeyed if all the provisions relate to the one subject indicated in the title, and are parts of it or incident to it or reasonably connected with it, or in some reasonable sense auxiliary to the object in view. It is not required that the subject of the bill shall be specifically and exactly expressed in the title, or that the title should be an index of the details of the act. Where there is doubt as to whether the subject is clearly expressed in the title, the doubt should be resolved in favor of the validity of the act." We fail to see wherein the subject matter of the act is not sufficiently expressed in the title, nor does plaintiff in error point out any special defect therein.

Plaintiff in error contends that by this enactment section 20 of article 4 of the constitution is violated, which is as follows: "The State shall never pay, assume or become responsible for the debts or liabilities of, or in any manner give, loan or extend its credit to or in aid of, any public or other corporation, association or individual." This contention results from the claim made by the plaintiff in error that the appropriation of money made by the act of June 14, 1897, to the Illinois State Normal University, is violative of the foregoing provision of the constitution, inasmuch as that institution, it is insisted, is a private corporation. This position of plaintiff in error results from what has been said by this court in *Board of Education* v. *Greenebaum & Sons*, 39 Ill. 609, where it was held that this board of education was an eleemosynary institution, founded for the purpose of the gratuitous distribution of knowledge in regard to teaching and conducting common schools, and erected not at the expense of the State but of individuals; and at the time of the opinion in that case the salaries of the instructors and other employees were fixed by the board, and no appropriation had then ever been made from the State treasury for its maintenance.

By an act approved February 18, 1857, entitled "An act for the establishment and maintenance of a normal university," found in the public laws of Illinois for 1857, on page 298, it is provided that certain persons named shall constitute "the Board of Education of the State of Illinois," having perpetual succession, etc. By section 2 the Superintendent of Public Instruction, by virtue of his office, is made a member and the secretary of the board, and required to report to the legislature, at its regular sessions, the condition and the expenditures of the university. Section 3 relates to the meetings of the board of education. Section 4 provides that the object of the university shall be to qualify teachers for the common schools of this State, by imparting instruction in the art of teaching in all branches which pertain to a common school education, etc. Section 5 provides as to the first meeting of the board of education, and further provides that they "shall visit the cities, villages and other places in the State which may be deemed eligible, for the purpose to receive donations and proposals for the establishment and maintenance of a normal university," and provides the board shall fix the permanent location at the place where the most favorable inducements are offered for that purpose, provided that such location shall not be difficult of access or detrimental to the welfare or prosperity of the university. Section 6 provides as to the power of the board to the appointment of a principal, lecturers and instructors, and prescribes their duties, with power of removal, and power to fix text-books and make regulations for management, etc. Section 7 provides for gratuitous instruction for certain pupils. Section 8 provides the interest of the university and seminary fund, or such part thereof as may be found necessary, shall be appropriated for the maintenance of the university. Section 10 provides the term of the board of corporators, and for the filling of vacancies by the Governor, by and with the consent of the Senate. These are the

several provisions declaratory of the purposes of the university, its manner of organization, the filling of vacancies in the board of corporators, and their powers, etc.

Subsequently, an act of the legislature was passed February 14, 1861, entitled "An act to re-fund the interest on the college or university fund and appropriate the same for the use of the State Normal University," the preamble of which recites the act of admission of the State of Illinois into the Union, by which a certain percentage of the proceeds of public lands lying within this State was set apart to the State, to be appropriated by the latter for the encouragement of learning, of which one-sixth part was to be exclusively bestowed upon a college or university. The act of the legislature of 1861 then recites that one-sixth of the per cent of those proceeds on the first of January, 1851, amounted to $122,607.54, and interest thereon to January, 1857, amounted to the sum of $98,956.82, and for the purpose of carrying out the intention of Congress the legislature passed the act establishing a normal university, and made an appropriation of a part of said sum so held under the act of admission, or rather the interest thereon, payable to this board of education for the use of the normal university, etc. Section 3 of the act of 1861 provides that this corporation shall have no power to sell or convey any part of the property acquired since the passage of the act incorporating it, nor to create any liability against the State without the express sanction of the legislature. Section 4 provides that each county shall be entitled to gratuitous instruction in the university of two pupils, instead of one, as provided in the original act.

Shortly prior to the passage of the act of 1861, above mentioned, a contract for the construction of certain buildings was entered into in writing by the board of education above mentioned, through its building committee, and by reason of default in payment of the amount to be paid the contractors, a petition for a mechanic's

lien was filed, and under the legislation had prior to the entering into of such contracts, to-wit, prior to the third day of March, 1860, it was held that this university was an eleemosynary institution, founded for the purpose of the gratuitous distribution of knowledge in the art of teaching and conducting common schools, and erected not at the expense of the State but of individuals, and it was held that this corporation was liable to be sued and was a private corporation. *Board of Education* v. *Greenebaum & Sons,* 39 Ill. 609.

On February 25, 1858, Edwin W. Bakewell and Julia A. Bakewell, his wife, who joined in the deed for the purpose of relinquishing her inchoate right of dower, conveyed to the Board of Education of the State of Illinois forty acres of land immediately adjoining the university grounds. The only condition named in the deed was the following: "*Provided,* the Normal University, under the control of the said Board of Education of the State of Illinois, shall forever remain where now located." On February 9, 1860, the said Edwin W. Bakewell and his wife united in another deed to the said Board of Education of the State of Illinois, which, after reciting the execution of the former deed and the condition therein, contained the following: "And whereas, the said Edwin W. Bakewell and Julia A. Bakewell, his wife, are willing and anxious to vacate and annul said condition to said deed, and to make the title of the said Board of Education of the State of Illinois to the said land conveyed by said deed become and be absolute in fee simple: Now, therefore, this indenture, made and entered into this ninth day of February, 1860, by and between the said Edwin W. Bakewell and Julia A. Bakewell, his wife, and the said Board of Education of the State of Illinois, witnesseth that they convey a full and complete and unconditional title in fee simple in and to the said forty acres."

After the above enactments and after the execution of these two deeds, on February 28, 1867, the General

Assembly passed an act entitled "An act concerning the board of education and the Illinois Natural History Society," sections 1 and 2 of which are as follows:

"Sec. 1. The State Normal University, established by an act approved February 18, 1857, is hereby declared a State institution, and the property, real, personal and mixed, in the hands and standing in the name of the Board of Education of the State of Illinois, is the property of the State of Illinois and is by said board held in trust for the State.

"Sec. 2. Said board of education is hereby authorized to sell and dispose of the out-lands and lots standing in the name of said board, lying in the counties of Jackson, Woodford and McLean, except the site of the Normal University, and the farm of one hundred acres, more or less, in its immediate vicinity, and to appropriate the proceeds thereof towards the payment of the appropriations hereinafter named."

Whilst this had been the precedent legislation with reference to this university, the General Assembly, by a joint resolution passed in 1883, directed the State Board of Education to convey the above mentioned forty acres of land to Julia A. Bakewell. The board of education refusing to comply with that direction, the General Assembly in 1885, by a joint resolution, declared the title to the forty acres of land mentioned in the deed of Julia A. Bakewell and her husband to be and was vested in Julia A. Bakewell. Her demand for the possession of that land was refused by the board, whereupon she filed a petition in the circuit court of McLean county for a writ of *mandamus* commanding the Board of Education of the State of Illinois to execute to her a deed to the forty acres of land, which, on hearing before the court without a jury, resulted in the awarding of the writ, and the board of education appealed to this court. On that appeal two questions were presented, viz., whether the legislature had the constitutional power to order the conveyance of

182—11

this forty acres of land to be made to Julia A. Bakewell; and if so, whether it could exercise such power by joint resolution. This court, in the discussion of the first branch of the case, held, in accordance with what had been previously held in *Board of Education* v. *Greenebaum & Sons, supra*, that this corporation was a private eleemosynary corporation, which was not to be deprived of its property by the above mentioned joint resolutions of the legislature, and declined to pass upon the question whether the legislature could exercise the power of making the grant by a joint resolution. This is the effect of the opinion in *Board of Education* v. *Bakewell,* 122 Ill. 339.

Under this legislation with reference to this university the members of the board of education are appointed by the Governor, with the exception of the Superintendent of Public Instruction, who is made one of its members with special duties, and who is required to make biennial reports to the legislature. The object of the institution is to qualify teachers for the common schools of this State. Each county is entitled to gratuitous instruction of a certain number of pupils, and it is contemplated that each student shall agree to teach in the public schools of the State a certain period of time. The board of education is compelled to present to the Governor a full statement of expenditures, with vouchers, which must be approved by him before the next quarter's appropriation can be drawn from the State Treasury or an order therefor given by the State Auditor.

Normal schools are public institutions, which the State has the right to establish and maintain. The purpose of their establishment is to advance the public school system and create a body of teachers better qualified for the purpose of carrying out the policy of the State with reference to free schools, and provide for a more thorough and efficient system of the schools, whereby all the children of this State may receive a good common school education. They are the legitimate offspring of the School

law entering into our plan of education, whereby teachers may be taught how best and most effectively to discharge their duties. *Burr* v. *City of Carbondale,* 76 Ill. 455.

By section 1 of article 8 of the constitution it is provided: "The General Assembly shall provide a thorough and efficient system of free schools, whereby all children of this State may receive a good common school education in this State." In complying with this mandatory provision the State has the right to select its own agencies or instrumentalities for the accomplishment of the purpose. To carry out this provision of the constitution there must be necessary expenditures of public moneys, resting upon considerations of the policy of the State with reference to the manner of compliance with this constitutional provision. Where a mandatory duty is imposed by the constitution on the legislature of the State, without restriction as to methods, the policy of the State may be determined by the legislature only, and its action must be regarded as conclusive as to the State policy. Normal schools being a recognized method of advancing the interests of the public school system which is mandatorily required of the General Assembly to be provided for, the legislature, having the power to prescribe the policy of the State with reference to such normal schools, had the power, before the present constitution as well as since, to provide by legislation that donations might be offered and taken into consideration in determining the place where certain institutions that are in their nature of a public character should be located. This was done under the act establishing the State Normal University, under the constitution of 1848, and has in more recent times been acted on by the legislature in the location of the Southern, Northern and Eastern Normal Schools and the Soldiers' Home. Because such donations have been made with reference to the last four named institutions they are not deprived of their public character. The normal university was authorized to receive donations by its

act of incorporation, its powers and duties, to a certain extent, being prescribed in that act; and the extension of State aid by the appropriation of interest on the college or university fund, and by the requirement that the school shall give gratuitous education to certain scholars of different counties of the State, was the adoption of a means to advance education in the common schools.

The constitution is merely a limitation upon the power of the legislature, which may do anything not forbidden by the express terms of the constitution or by necessary implication. The power of the legislature to adopt such agencies as it may deem proper to carry out the State policy would authorize it to provide for the education of teachers for the common schools, and this private corporation, created before the adoption of the present constitution, benefited and aided by the legislation of the State by reason of its receipt of the interest on the college and university fund provided for by the act of admission of the State of Illinois into the Union, was an agency of the State in the interest of the common schools when the present constitution was adopted, which included the provision of section 20 of article 4, that the State shall never pay, assume or become responsible for or loan or extend its credit to any public or other corporation. That provision of the constitution does not, by express terms or by necessary implication, prevent the State from using such agencies for the advancement of public school education that may be deemed proper under the policy of the State, which is exclusively left to be determined by the legislature under the provisions of section 1 of article 8, which necessarily require the expenditures of public moneys.

It is a principle of construction of a constitution, that it is proper to take into consideration the uniform, continued and contemporaneous construction given by the legislature and generally recognized, as to its meaning or intention, and such contemporaneous construction af-

fords a strong presumption that it rightly interprets the meaning and intention. *Bunn* v. *People*, 45 Ill. 397; *People* v. *Board of Supervisors*, 100 id. 495; *People* v. *Thompson*, 155 id. 451; *State* v. *Mayhew*, 2 Gill, (Md.) 487; Cooley's Const. Lim. 82.

After the act of 1867, appropriations were made from the State Treasury for the erection of buildings and the purchase of apparatus and appliances for this institution. At the first session of the legislature after the adoption of the present constitution of this State, and at almost every session since that time, the legislature has passed appropriation bills, which have received the approval of the Governor. Both the legislative and executive branches of the government have adopted a contemporaneous construction of the instrument, to the effect that this private corporation, authorized to receive donations from individuals for the purpose of advancing education, was a State agency for the instruction of teachers to be employed in public schools, which necessarily required expenditures of public money under an appropriation by the legislature, to be paid on warrants of the Auditor drawn on the State Treasury. Such expenditures, in consideration of benefits received by the State in the gratuitous instruction of teachers, could as properly be paid by the State to this private corporation as the appropriations made for the support of the Southern or the Northern or the Eastern Illinois Normal Schools, as the expenditures in each case are for one and the same end, and such appropriations are not an assumption of the debts or liabilities of the institution nor a loan or extension of credit in aid of this corporation.

Counsel for defendants in error present the question that this bill was obnoxious to a demurrer for the reason that the bill did not make proper parties defendant those who were directly affected by the decree to be rendered. Under the view we take of this case it is unnecessary to

extend this opinion by discussing this question, as what has been said disposes of the case.

The decree of the circuit court of Sangamon county is affirmed.

*Decree affirmed.*

Mr. JUSTICE CRAIG: In my judgment this opinion overrules *Board of Education* v. *Bakewell*, 122 Ill. 339, and for that reason I cannot endorse the doctrine of the opinion.