### Francis Leon v. John L. McIntyre.

1. TRUSTEES—*No Power to Receive Payment of the Debt Secured.*— The fact that a person is made the trustee in a trust deed gives him no right or authority to receive payment of the debt secured by such deed.

2. PAYMENT—*Made to an Unauthorized Person of No Avail.*—Where the maker of a note secured by a trust deed intrusted his money to the person named in the deed as the trustee, for the purpose of paying the note, without requiring him to produce the note, which such maker had made payable to a third person, the fact that a fictitious note and trust deed were imposed upon him by the trustee, will not avail him as against the payee and owner of the note.

3. LACHES—*Where One of Two Persons Must Suffer from Negligence.* —Equity will not postpone the interests of one who stands fair and who has omitted no duty devolving upon him, to the interest of one whose negligence made the loss possible to occur.

**Bill of Foreclosure.**—Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge, presiding.    Heard in this court at the October term, 1899.    Affirmed.    Opinion filed April 16, 1900.

**Statement.**—Mrs. Catherine Price, being the guardian of appellee, then a minor, invested $2,500 of the infant's funds in a loan to appellant, secured by trust deed upon real estate

in Cook County. Frank Price, a son of the guardian, acted as her business agent, and Charles W. Griggs was her lawyer. It was through Griggs that the loan was effected, and he was made trustee in the trust deed by which it was secured. Price kept the note and trust deed in his possession at all times after the loan was made, except that upon various occasions the note was given to Griggs for a minute or so to indorse interest payments upon it in the presence of Price, who always brought the note to Griggs and took it away again.

The interest payments for the first period of the note's duration were evidenced by coupons, and it was the custom, always followed, for the debtor, appellant, to send the money to Griggs, and thereafter Price delivered the coupon to Griggs and got the money from him. The note and coupons were payable at Griggs' office, but payable to the order of appellee, John L. McIntyre, the minor.

On July 1, 1885, appellant paid the amount due as principal upon the note to Griggs, and Griggs gave to him at that time a forged copy of the principal note, a forged copy of the trust deed, and a release of the same, executed by Griggs, trustee.

The release recited that the trust deed which it purported to release was recorded in book 1415 of records, page 2, while the trust deed canceled and surrendered by Griggs was marked recorded in book 1061 of records, page 475. It appears that the note delivered to appellant canceled, differs from the original note made by Leon to McIntyre in this, that a description of the premises in the original note is not in the forged note delivered to him and marked paid. Griggs never at any time paid the money received in payment of the principal of the note to Mrs. Price, nor ever informed Mr. Price or Mrs. Price of the payment to him.

The evidence further shows that Griggs himself paid the interest on the note to Price, from July 1, 1885, until December 6, 1893, when he made the last payment thereon. He meanwhile indorsed eight different fictitious extensions on the back of the note.

In June, 1892, Leon sold the premises secured by the

trust deed to Hattie O'Brien, who, it appears, bought in good faith.

In March, 1894, Mrs. Price, the guardian, employed other attorneys. It was then discovered by them that Griggs had given a release deed to appellant. They were, however, ignorant of the fact that he had forged a note and given it to appellee, or that he had forged a trust deed. They had previously discovered another affair in which Griggs had acted dishonestly, and when Griggs came in with $1,500 to apply on the payment of that matter, they insisted on applying it on the note made by appellant, and Griggs was informed of the credit. Griggs protested, but the credit was made. He went out and a few days later died. Some time during March of the same year, and before this payment of the $1,500, Mr. McIlvaine, as attorney for the guardian, and Mr. Price, went together to see appellant, Leon, and were informed when they arrived there, by some one in the house, that Mr. Leon was not in. Mr. McIlvaine's recollection is that he left either his business card or a pencil note, asking Mr. Leon to come to his office, but that he did not come. On October 9, 1894, he gave him formal notice that the note had been placed in his hands for collection, and after unsuccessful attempts at a settlement, filed the present bill to foreclose on February 21, 1895.

Upon the final hearing, the court holding that the trust deed, having been released by the trustee named therein, was no longer a lien on the premises conveyed, dismissed the bill as to all of the defendants except Leon, for want of equity, but, holding him liable upon his note, gave a personal decree against him for $1,393.54 and costs. From that decree Leon appeals.

J. Edwards Fay, attorney for appellant.

Follansbee & Follansbee, attorneys for appellee.

Mr. Presiding Justice Sears delivered the opinion of the court.

But two questions are presented upon this appeal, viz.:

First, was the payment of the principal note by appellant to Griggs operative as a payment to the minor, appellee, or to his guardian; and second, is appellee estopped by reason of any *laches* upon his part, or upon the part of his guardian, from now disputing the effect of such payment. We are of opinion that each question must be determined in favor of the decree. There is no evidence in this record which would warrant the conclusion that appellee or his guardian ever empowered Griggs to act for him in the accepting of payment of the money due upon the note. The prior course of business between these parties did not tend to such conclusion. Appellant had, it is true, been in the habit of sending the money to Griggs to pay interest, but the guardian of appellee had never left any coupon nor the principal note with Griggs for any such purpose. The coupons were given to Griggs only in exchange for the money. The principal note was merely handed to him for indorsement of payments, and that in the immediate presence of the business agent of the guardian, who kept the note, bringing it to Griggs, and taking it away again at once after the indorsement was made. The terms of the transaction indicate no such authority in Griggs. That he was made trustee in the trust deed is of no consequence in this behalf. This gave him no right or authority to receive payment of the debt secured by the trust deed. The fact that the note and interest coupons were made payable at Griggs' office can not control, for by the very terms of the note it was payable to John L. McIntyre, the minor. Appellant knew by his own note that he was indebted to this person and not to Griggs. What authority, then, can Griggs be said to have had to bind the minor or his guardian in accepting payment, or what right had appellant to pay to Griggs without production of the note which he had made payable to the order of the minor?

We are of opinion that these questions are settled adversely to appellant by the decision of this court and the Supreme Court in Stockton v. Fortune, 82 Ill. App. 272, affirmed in 182 Ill. 454.

There remains, then, only the question of *laches*.

In March, 1894, nearly nine years after the payment to Griggs, it was, for the first time, learned by appellee, or his legal representative, that the money had been given by appellant to Griggs. In the meantime, by a system of fictitious extensions of the time of payment, and by himself paying the interest from time to time, Griggs had prevented a discovery of his use of the money given him by appellant.

In March, 1894, an attorney of the guardian of appellee attempted to see Leon, appellant, and left some note or card, requesting him to call upon the attorney. This notice appellant testified that he had never received. No other notice was given until October, 1894, some seven months later, when appellant learned through the attorney the fact that Griggs had embezzled the fund left with him to pay the note and that the supposed note and trust deed delivered to appellant were forgeries.

The question presented is, does the lapse of this period of seven months, during which Griggs died, without notice to appellant of the discovery of appellee's attorney that a fraud had been practiced upon appellant, operate to bar any right of action by appellee upon the note.

When the notice was given to appellant upon October 9, 1894, appellee was still under age. This suit was begun by him after attaining his majority.

The decisions as to what will constitute such *laches* as will bar relief in cases like this, are based upon the peculiar facts of each case, and do not and could not declare any rule by which any certain measurement in period of time can be made. Whether the question be treated as one of *laches* to bar relief, or of ratification of the action of Griggs, in neither event are we prepared to hold that the conclusion reached by the master in chancery and by the learned chancellor, is unwarranted.

We are of opinion that the payment of the $1,500 by Griggs to the attorney of the guardian after the fraud was discovered, is of no controlling importance. This money was thus applied without the assent of Griggs and against

his protest.  There is no evidence whatever of any agreement of forbearance as to the balance of the moneys due upon the note.

If, as counsel for appellant insists, the loss here consequent upon the wrong of a third party should be imposed upon the one of the litigants who is the more to be charged with negligence causing that loss, the conclusion must be in support of the decree.  Appellant negligently intrusted his money to Griggs for the purpose of paying a note which he, appellant, had made payable to John L. McIntyre, and the money was thus given without a production of the note itself.  The fact that a fictitious and forged note and trust deed were imposed upon appellant does not assist him.  An examination of what purported to be his own signature should have protected him.  The note was not even an exact copy of the genuine note.  An examination of the book and page of purported record of the forged trust deed upon it and in the release, or a comparison with abstract of title or the records, would have disclosed the fraud.  Appellee, on the contrary, is chargeable with no negligence which made the fraud possible.  His representative never appears to have trusted Griggs with any paper evidencing the debt.  When payments of interest were received, the note was not left in Griggs' hands beyond the moment of time necessary for the indorsement, and that only in the presence of the representative of appellee.

So far as any question arises as to negligence of either of these two litigants, by which it became possible for Griggs to accomplish the fraud, it must be said as in Keohane v. Smith, 97 Ill. 156 :

" Equity will not postpone the interests of one who stands fair, and who has omitted no duty devolving on him, to the interest of one whose negligence made it possible for loss to occur."

No question is raised as to the propriety of the decree in disposing of the rights of other litigants, and the sole question is as to any liability of appellant upon his note. We are of opinion that the decree determined that question properly.  The decree is affirmed.