(No. 20096.—⬛)

WILLIAM E. FURLONG, Appellant, *vs.* THE SOUTH PARK COMMISSIONERS *et al.* Appellees.

*Opinion filed June 20, 1930—Rehearing denied October 11, 1930.*

WILLIAM E. FURLONG, *pro se.*

JOHN A. SWANSON, State's Attorney, GEORGE E. GORMAN, ROSENTHAL, HAMILL & WORMSER, LOUIS H. GEIMAN, and HAYDEN N. BELL, (LEO F. WORMSER, and RAYMOND HARKRIDER, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

It is generally known throughout the State that a rather large building erected in Jackson Park, in the city of Chicago, as a part of the World's Columbian Exposition of 1893 and known as the Fine Arts Building, was not destroyed as most of the buildings were at the termination of the Columbian Exposition. The building was of unusual architectural design and beauty and was taken over

by the South Park Commissioners, and its occupation was allowed the Columbian Museum, and later the Field Columbian Museum, which was a corporation not for pecuniary profit. The Field Museum, after an occupancy of about twenty-six years, vacated the building during 1920. It had become somewhat dilapidated and in disrepair, and the South Park Commissioners, after receiving many requests from civic bodies and other organizations for the preservation of the building, resolved to preserve, repair and reconstruct it in a manner suitable for use, among other purposes, as an industrial museum. The cost of the work was to be defrayed by a bond issue of $5,000,000, which at a referendum election held in June, 1924, the people voted to issue to preserve the building for public purposes, among them a museum. In March, 1925, after the people had voted for the bond issue, William E. Furlong, who is appellant here, filed a tax-payer's bill in the superior court of Cook county to enjoin the issue of the bonds. The court dismissed the bill, and the decree, on appeal, was affirmed by this court April 23, 1926, in *Furlong* v. *South Park Comrs.* 320 Ill. 507. In 1926 Julius Rosenwald proposed to establish an industrial museum, and on August 18 of that year he and the Commercial Club of Chicago submitted a proposal to the South Park Commissioners for the use of the Fine Arts Building. Rosenwald proposed to contribute a sum not less than $3,000,000 to pay the deficit of the cost of reconstructing and restoring the Fine Arts Building after the application of the $5,000,000 bond issue for that purpose and the balance of the $3,000,000 was to be used for the general purposes of the museum. The proposal was considered and accepted by the South Park Commissioners, and a corporation not for pecuniary profit was organized for the purpose of acquiring and operating an industrial museum. The corporation was first designated the Rosenwald Industrial Museum, but its name was later changed to Museum of Science and Industry. The charter

of the corporation provides it is "a corporation not for pe-
cuniary profit and no part of the net earnings thereof shall
inure to the benefit of any member, private shareholder or
individual, and the said corporation shall be operated ex-
clusively for scientific, literary, school and educational pur-
poses." Any person of good moral character was eligible
to membership in the corporation. Its first board of trus-
tees, consisting of eighteen persons, was selected by the
Commercial Club of Chicago and is composed of prominent
and public-spirited citizens. Later the number of trustees
was increased to twenty-three, making the five members,
from time to time, of the South Park Commissioners
*ex-officio* trustees of the museum corporation. Between the
time of the proposal and March, 1929, the South Park
Commissioners in June, 1928, passed an ordinance provid-
ing for the issuance of the $5,000,000 bond issue for the
purpose of obtaining funds necessary to restore and recon-
struct the Fine Arts Building. Bids were received for the
work, and being in excess of the authorized bond issue all
bids were rejected. The prospective deficit to make the
desired improvement and restoration of the building as
planned appeared to be between one and a half and two
million dollars. Thereafter Julius Rosenwald agreed to
pay whatever deficit there might be in the restoration of
the building in addition to the gift of $3,000,000 mentioned
in his proposal of August 18, 1926. On March 20, 1929,
the South Park Commissioners passed an ordinance author-
izing the execution of an agreement with the Rosenwald In-
dustrial Museum relative to the restoration of the Fine Arts
Building in Jackson Park and its use and occupancy by the
museum corporation. The agreement was set forth in full
in the ordinance, and by its terms the South Park Commis-
sioners agreed to issue bonds in amount of $5,000,000 as
authorized by a vote of the people for the purpose of restor-
ing the exterior of the Fine Arts Building in Jackson Park
and the reconstruction of the interior in such manner as

to permanently preserve the building and render it suitable for certain public purposes mentioned. The ordinance and agreement recited the Supreme Court had decided the proposed bond issue was valid and that the Rosenwald Industrial Museum, an Illinois corporation, was authorized to establish and maintain a museum relating to the progress of industry and science; that the museum corporation was desirous of acquiring the Fine Arts Building for that purpose, and Julius Rosenwald agreed to contribute $3,000,000 to the museum corporation, conditioned upon the allocation to it of the site and the restoration and reconstruction of the building in accordance with the agreement. The ordinance and agreement recited that the use of the building as an industrial museum is advantageous to the public interest and is a practicable use of the property, and provided the commissioners should allocate to the museum the building and certain land surrounding that upon which the building stands. The ordinance and agreement provided that so long as the museum corporation maintained and operated an industrial museum on said site the site was to be kept free from all other buildings; that the commissioners should sell such portions of the bonds authorized as in their discretion would yield a sum adequate for the restoration of the exterior of the building and proceed forthwith to enter into a contract or contracts for the restoration of the exterior of the building with all reasonable dispatch. The commissioners agreed to apply the entire net proceeds of the sale of all the bonds to the cost of restoring the exterior of the building, the payment of architect's fees, and, so far as the net proceeds shall extend, to the cost of reconstruction of the interior of the building. The museum corporation agreed to pay the balance of the cost of restoration after the bond issue had been used. The museum corporation was to hold the park commissioners harmless at all times against any loss, cost or expense occasioned by injuries to persons in the operation of the museum. On June 28, 1929, appel-

lant filed an amended and supplemental bill in this case. The bill sets forth the substance of the proposal made by the Commercial Club of Chicago and Julius Rosenwald to the South Park Commissioners relative to the reconstruction and use of the Fine Arts Building as an industrial museum, and also sets forth the agreement of March 20, 1929, with the Rosenwald Industrial Museum pursuant to the ordinance of the South Park Commissioners, whereby the park commissioners would allocate to the museum corporation, without any charge for rentals or otherwise, the Fine Arts Building and certain lands immediately surrounding it. A prayer and motion for a temporary injunction restraining the park commissioners from carrying out their ordinance and agreement with the museum corporation was denied. Thereafter the court entered a decree dismissing the bill for want of equity, and complainant, who filed the bill as a tax-payer, has appealed.

The decree covers approximately seventy pages of the abstract, is very full, and describes minutely the museum corporation, its purposes and benefits. The decree is too long to quote in this opinion.

Appellant contends the decree was erroneous in holding that the ordinance and agreement did not violate separate section 2 or section 14 of article 2 of the constitution of the State of Illinois, that the agreement of March 20, 1929, was not void or illegal, and that the purposes mentioned in the agreement of March 20, 1929, were not illegal or unconstitutional.

In answer to appellant's contention that the ordinance and agreement of the park commissioners constitute a donation or loan of credit to the museum corporation, appellees state that the benefits accruing to the park commissioners and the public greatly outweigh any benefits accruing to the museum corporation. The museum corporation is not a corporation organized for profit. It has no stock and no member of the corporation can receive any dividends. Appel-

lees cite *St. Hedwig's School* v. *Cook County*, 289 Ill. 432, and *Maffit* v. *City of Decatur*, 322 id. 82, that the exchange of one thing for another does not constitute a donation or loan of the municipality's credit. In *Bullock* v. *Billheimer*, 175 Ind. 428, 94 N. E. 763, it was urged that the appropriations involved were invalid as providing aid to private corporations. The court denied the claim and said the associations were not organized for pecuniary profit but for public purposes, and that the test was not the means employed but the use or object sought. In *Sambor* v. *Hadley*, 291 Pa. St. 395, the court held "appropriations may lawfully be made to separate corporations where such bodies are engaged in carrying out a proper municipal activity." In *Hagar* v. *Kentucky Children's Home Society*, 119 Ky. 235, the court, after reviewing decisions of several other States, said: "These authorities clearly settle that the vital point in all such appropriations is whether the purpose is public, and that if it is, it does not matter whether the agency through which it is dispensed is public or is not; that the appropriation is not made for the agency but for the object which it serves. The test is in the end—not in the means. The limitation put upon the State government by the people is as to what things it may collect taxes from them for, to which it may apply their property through taxation—not upon the means by which or through which it will do it." This court said in *Boehm* v. *Hertz*, 182 Ill. 154: "The State has the right to select its own agencies or instrumentalities for the accomplishment of the purpose." In *Hagler* v. *Small*, 307 Ill. 460, the court, after some reference to a comment on the case of *Boehm* v. *Hertz, supra,* said: "That decision was, in effect, that while a private corporation benefited by the gift the purpose of the appropriation was public, and the act providing for it did not come within the prohibition of section 20 of article 4 of the constitution."

The legislature of this State in 1893 passed an act entitled "An act concerning museums in public parks." (Laws

of 1893, p. 160.) That act authorized park commissioners to purchase, erect or maintain within a public park, edifices to be used as museums for the collection and display of objects pertaining to natural history, the arts and sciences. The act was amended several times, and in 1925 the park authorities were authorized to erect and maintain edifices to be used as aquariums or museums for purposes in the act mentioned. From 1894 to 1920 the Field Museum of Natural History, a corporation not for pecuniary profit, maintained in the Fine Arts Building here involved a museum of natural history, arts and sciences. The ordinance authorizing the Field Museum to occupy the premises required the park commissioners to pay the museum $15,000 per year so long as it was maintained in the Fine Arts Building. Pursuant to the act of 1893 and its several amendments the South Park Commissioners have levied and collected taxes and paid out large sums of money to the Art Institute of Chicago and the Field Museum of Natural History, both of which are corporations not for pecuniary profit and of great public benefit from an educational standpoint. In the construction of the constitution it is proper to consider the uniform, continued and contemporaneous construction given by the legislature and generally recognized. *Boehm* v. *Hertz, supra.*

Separate section 2 of the constitution, which provides no county, city, town, township or other municipality shall ever become subscriber to the capital stock of any railroad or private corporation or make donation to or loan its credit in aid of such corporation, seems to apply only to corporations having a capital stock or organized for profit. *Murphy* v. *Dever,* 320 Ill. 186; *Daggett* v. *Colgan,* 92 Cal. 53, 27 Am. St. Rep. 95; *Bourland* v. *Pollock,* 157 Ark. 538.

Appellant places much reliance on *Washingtonian Home* v. *City of Chicago,* 157 Ill. 414. If that case is properly analyzed it does not sustain appellant at all, as the Washingtonian Home was not really a corporation not for pecuniary

profit. The charter of the museum corporation expressly provides that no part of its earnings shall inure to the benefit of any member, private shareholder or individual but shall be operated exclusively for scientific, literary, school and educational purposes. All its revenue must be exclusively devoted to maintaining the museum. The museum is not an end in itself but a means to an end, by which the park commissioners could afford the public at large the privileges of an industrial museum.

Appellant contends the agreement of March 20, 1929, is void because in violation of the Corrupt Practices act. Judge Dillon, in his work on Municipal Corporations, (vol. 2, 5th ed. p. 1146,) says: "In general, the disqualifying interest must be of a pecuniary or proprietary nature." And it is said in 44 Corpus Juris, 93: "An interest to invalidate the contract must be of a personal or private nature, so that an interest incident to a membership in an association organized for the public welfare, and not for profit, will not have that effect." The five members of the South Park Commissioners were to be *ex-officio* trustees of the museum corporation. As the trustees of the corporation, five members of which were park commissioners, were to pass on all contracts of the corporation, it is contended they cannot preserve their independence such as is required of public officials. They receive no compensation for their services. The corporation of which they are trustees has no capital stock, is not organized for profit and pays no dividend. A fairly well-reasoned case relating to this subject is *Crawford* v. *Clifton Heights Borough*, 11 Pa. Dist. 630. Besides, appellees assert that this contention was not made below, and that assertion is not denied in the reply brief.

We are not impressed with the argument of appellant that the ordinance and agreement of March 20, 1929, are void as tending to create a monopoly.

As to the powers of the park commissioners to sell the $5,000,000 bonds and use the proceeds to restore the Fine

Arts Building and render it suitable for an industrial museum, we refer to our former decision in this case, (320 Ill. 507,) and we agree with the chancellor that the power was not violated by the agreement of March 20, 1929, and that the agreement was not *ultra vires*.

It strikes us very forcibly in considering this case that the park commissioners were acting in the public interest. The benefits to the public of such a museum as is here proposed are not denied, and the public have the proposal of Julius Rosenwald, a public-spirited, philanthropic man, to contribute approximately $3,000,000 for the public good in collecting and conducting the museum, and we do not think the commissioners have violated any rule of law or the constitution in passing the ordinance and entering into the contract.

The decree of the superior court of Cook county is affirmed.

*Decree affirmed.*