# Sambor, Appellant, *v.* Hadley, Controller, et al.

*Municipalities—Ordinances—Appropriation for Sesqui-Centennial Exposition—Corporation as agent of municipality—Payment of debts—Moral obligation—Transfer of funds—Constitutional law—Local or special statutes—Classification—Acts of June 25, 1919, P. L. 581; April 3, 1923, P. L. 50; July 11, 1923, P. L. 1037; April 6, 1927, P. L. 123, and March 2, 1927, P. L. 7—Taxpayers' bill—Delay—Laches.*

1. A municipality may lawfully make appropriations to separate corporations, where such bodies are engaged in carrying out a proper municipal activity.

2. A city may lawfully appropriate money for commemorating an important historical, military or civil event.

3. The City of Philadelphia had the power to appropriate money to celebrate the 150th anniversary of the Declaration of Independence, signed within its corporate limits.

4. In making such an appropriation it had the power to use as its agency in paying out the money, a corporation of the first class, not for profit, organized for that special purpose.

5. Where the city had pledged its municipal honor, faith and credit to carry on in every possible way the work of the celebration, and its agency, the corporation, has contracted debts for that purpose, the city may, under its moral obligation, appropriate the money to pay such debts.

6. Such appropriation may be made against funds produced by the sale of municipal bonds which are valid obligations of the city.

7. If the limitation imposed by the Act of April 3, 1923, P. L. 50, raised a valid objection to a transfer of a loan from another municipal project to the celebration of the sesquicentennial, it was effectively removed by the curative Act of March 2, 1927, P. L. 7, which does not violate the Constitution as special or local legislation.

8. Objection that an appropriation made to the city's agent, and not for debts incurred directly by the city itself, was invalid by reason of the Act of June 25, 1919, P. L. 581, is met by the Act of July 11, 1923, P. L. 1037, which specially authorizes any city of the first class to borrow money and incur debts for the sesquicentennial celebration, and the Act of April 6, 1927, P. L. 123, which empowered the city to pay for services rendered and materials previously furnished on that account, whether directly to

the municipality or to an agency or corporation organized to conduct the celebration.

9. The Acts of July 11, 1923, P. L. 1037, and April 6, 1927, P. L. 123, are not invalid as local or special legislation in violation of article III, section 7, of the Constitution.

10. Legislative classification of cities according to the purpose for which money can be borrowed, is valid wherever the purpose is one appropriate to a large city and not appropriate to a small one.

11. A recognition by the Act of April 6, 1927, of Philadelphia as a city of the first class, inasmuch as it was passed subsequent to the constitutional amendment of November 6, 1923, relating to the classification of cities, is in effect a classification under the amendment.

12. A taxpayers' bill to restrain the appropriation of public moneys to the payment of debts contracted by a municipality, is properly dismissed for laches, where such taxpayers sat idly by for years, while such debts were being contracted.

13. On other than constitutional questions, delay and laches are fully as applicable to taxpayers as to other complainants in equity, and the rule forbidding relief in the face of undue delay, may be invoked in cases which involve public interests.

Argued November 28, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 337, Jan. T., 1927, by plaintiff, from decree of C. P. No. 3, Phila. Co., March T., 1927, No. 9540, dismissing bill in equity, in case of George Sambor, taxpayer, v. Will B. Hadley, city controller of Philadelphia, Harry A. Mackey, city treasurer of Philadelphia, and City of Philadelphia, defendants, and Turner Construction Co., and Austin Co., intervening defendants. Affirmed.

Taxpayers' bill for injunction. Before FERGUSON and DAVIS, JJ.

The opinion of the Supreme Court states the facts.

Bill dismissed. Plaintiff appealed.

*Error assigned,* inter alia, was decree, quoting record.

*James J. Regan, Jr.,* for appellant.—The whole appropriation to each and every of the creditors of this private corporation, composed of said officials, is unconstitutional and void in violation of the 7th section of article IX of the Constitution of Pennsylvania: Wilkes-Barre City Hospital v. Luzerne Co., 84 Pa. 55; Taylor v. Phila., 261 Pa. 458; Page v. King, 285 Pa. 153; Speer v. School Directors, 50 Pa. 150; Kennedy v. Meyer, 259 Pa. 306; Wheeler v. Phila., 77 Pa. 338; Brode v. Phila., 230 Pa. 455; Historical Pageant Assn. of Phila. v. Phila., 260 Pa. 447.

There was a violation of article III, section 7, as to special and local legislation: Com. ex rel. v. Gumbert, 256 Pa. 531; Graeff v. Schlottman, 87 Pa. Superior Ct. 387.

It is clear that the legislature intended to evade the Constitution in an effort to assist the officials of the City of Philadelphia in covering up all the glaring mistakes which they had previously made in their conduct and operation of this exposition in private capacities as individual officers and directors of the private corporation: Taylor v. Phila., 261 Pa. 458; Chalmers v. Phila., 250 Pa. 251, 255; Wheeler v. Phila., 77 Pa. 338; Ayar's App., 122 Pa. 266; Com. v. Casey, 231 Pa. 170.

The transfer and the loan was illegal: Kraus v. Phila., 265 Pa. 425; Stegmaier v. Goeringer, 218 Pa. 499; Wolff Chem. Co. v. Phila., 217 Pa. 215, 221, 226; Raff v. Phila., 256 Pa. 312, 315; Bindley v. Pittsburgh, 64 Pa. Superior Ct. 371, 377.

There was violation of article XV, section 2, of the Constitution: Trust Co. v. Blankenburg, 22 Pa. Dist. R. 20.

There was a violation of article III, section 20: Perkins v. Phila., 156 Pa. 539; Moll v. Morrow, 253 Pa. 442, 444; O'Neil v. Ins. Co., 166 Pa. 72.

A moral obligation arises only out of an actual debt which has become uncollectible because of some defect in the law under the authority of which it was originally

contracted: Strock v. Cumberland Co., 176 Pa. 59; Faas v. Warner, 96 Pa. 215; Guyer v. Bedford Co., 49 Pa. Superior Ct. 60.

*George Wharton Pepper,* of *Pepper, Bodine, Stokes & Schoch,* with him *Joseph S. Conwell* and *Theodore S. Paul,* for appellee.—The city had the right to appropriate for the payment of the debts of the exhibition association: Com. v. Walton, 182 Pa. 373; Stegmaier v. Goeringer, 218 Pa. 499; Seer v. School Directors, 50 Pa. 150; Wheeler v. Phila., 77 Pa. 338; Com. v. Pittsburgh, 183 Pa. 202.

There is no constitutional or other objection to an appropriation made by the city in discharge of a moral obligation: Kennedy v. Meyer, 259 Pa. 306; Vare v. Walton, 236 Pa. 467; Com. v. Walton, 236 Pa. 220; Cunningham v. Dunlap, 242 Pa. 341.

There were funds lawfully subject to appropriation for this purpose: Com. v. Wert, 282 Pa. 575.

The transfer of the loan was a valid transaction.

*James Francis Ryan,* with him *Ernest Lowengrund,* Assistant City Solicitor, and *Joseph P. Gaffney,* City Solicitor, for City of Philadelphia, cited: Chew v. Phila., 257 Pa. 589; Bailey v. Phila., 167 Pa. 569.

*Saul, Ewing, Remick & Saul* and *George C. Klauder,* for Turner Construction Company, intervening defendant.

Opinion by Mr. Chief Justice Moschzisker, January 3, 1928:

This appeal by plaintiff involves a decree of dismissal entered on a taxpayers' bill against the City of Philadelphia, its fiscal officers, and certain private corporations, the last named being intervening defendants.

On April 19, 1921, the city council passed an ordinance appropriating to the departments of the city treas-

urer and the mayor the sum of $50,000, for the preparation of plans to carry into effect a celebration of the 150th anniversary of the signing of the Declaration of Independence, to be held in the City of Philadelphia in the year 1926. A charter was granted May 9, 1921, by the Governor of Pennsylvania to the Sesqui-Centennial Exhibition Association, for the purpose of celebrating this important occurrence by holding an exhibition showing the progress of the United States in art, science, industry, trade and commerce. On February 1, 1922, a resolution of the city council was passed reciting that the Sesqui-Centennial Exhibition Association had been formed for the purposes stated, declaring that it was fitting that the City of Philadelphia, in its municipal and corporate character, should assume the leadership in the consummation of the enterprise, and pledging the municipal honor, faith and credit to carry on in every possible way the work of the exhibition; also pledging that the necessary funds would be provided by the municipality as its contribution to the purposes in view, and, specifically, that at least $5,-000,000, and so much more as might be required, would be provided by loan or otherwise, and duly appropriated to the best advantage of the exhibition.

Subsequently, the city council at various times made appropriations, and authorized loans, the condemnation of land and the execution of leases, in aid of the exhibition. Up to and including June 28, 1926, more than $4,-000,000 had been appropriated; and the exhibition was held in that year as contemplated. Notwithstanding the large sums of money received from the municipality, as well as from admission fees, sales of concessions, participation certificates, and other sources, the exhibition was a financial failure. Under the authority of the Act of April 3, 1923, P. L. 50, an ordinance was passed on October 1, 1926, declaring that the purpose for which a certain loan had been previously authorized, on May 16, 1916, by the electors, was impracticable and inad-

visable, and, further, providing for the submission to the electors of the question of the transfer of this loan from the original purpose to others stated in this ordinance, one of which was to celebrate the sesquicentennial anniversary. The transfer thus suggested was approved by the electors on November 2, 1926, and by ordinance of December 17, 1926, the mayor was authorized to draw and the city controller to countersign warrants to enumerated persons, firms and corporations, in amounts set opposite their respective names, for the payment of bills incurred in connection with the sesquicentennial anniversary exhibition, to the extent of $5,-000,000. The two intervening defendants, the Turner Construction Company and the Austin Company, were among the creditors provided for. Municipal bonds to the above amount were issued and sold to the public; the proceeds of this loan are now in the city treasury, and form the subject-matter of this bill.

From the foregoing facts, and others which we need not recite, the court below reached the following conclusions of law: "(1) The ordinance of December 17, 1926, was a valid appropriation of the items......specified to the respective persons, firms or corporations [therein] set forth. (2) This ordinance was passed in the valid exercise of the power of the municipality to recognize and discharge a moral obligation. (3) The appropriation was made against funds produced by the sale of municipal bonds which are valid obligations of the city. (4) Notwithstanding the fact that the appropriation is for definite sums to definite persons, firms and corporations, there is no obligation upon the controller to countersign warrants under the ordinance, if he has reason to believe any of [the bills] are for improper amounts or have been discharged by the Sesqui-Centennial Association. (5) If the limitation imposed by the Act of April 3, 1923, P. L. 50, constituted a valid objection to the transfer of the loan in question from the Roxborough project to the Sesqui-Centennial Exhibi-

tion, that objection was effectively removed by the Act of March 2, 1927, P. L. 7. (6) The ordinance of December 17, 1926, and the Act of March 2, 1927, P. L. 7, are not open to valid objection on the ground of unconstitutionality. Finally, (7) the bill should be dismissed at the cost of the plaintiffs."

All of the above conclusions, except the fourth, are assailed by appellant, and such of his attacks as impress us as possessing sufficient substance to require special consideration will be discussed in this opinion; some of them do not fall within that category.

The ultimate questions for decision are, (1) whether the city ordinance of December 17, 1926, is a valid exercise of municipal power, (2) whether the fund of $5,000,000, appropriated by that ordinance, was validly raised and legally available for the object in view, and (3) whether, on April 8, 1927, the date of the filing of the present bill, complainants were barred by laches; but, of course, these questions raise a number of subordinate ones, which must also be considered.

The intent of the ordinance, as stated therein, was to comply with the pledges of the city as expressed by resolutions of council on February 1, 1922, and reiterated on September 4, 1926, which were to support the celebration of the sesquicentennial financially and otherwise. In fulfillment of these pledges, the ordinance directed that bills of certain specified creditors should be paid by warrants authorized by the mayor and countersigned by the city controller to the extent of $5,000,000, which was the amount appropriated for the purpose. The validity of the ordinance depends, first, upon whether the city, by its council, could lawfully appropriate money to an agency like the one here employed and for such a purpose; second, whether the city could lawfully use this particular $5,000,000, which was then in the city treasury.

It has long been established in Pennsylvania that appropriations may lawfully be made to separate corpora-

tions where such bodies are engaged in carrying out a proper municipal activity. For instance, in Com. v. Walton, 182 Pa. 373, 375, 376, 377, this court ruled that an appropriation could be made to a corporation for the purpose of accumulating a fund to pay pensions to its members and the family of deceased members, where the membership consisted of municipal officers and employees; that such an appropriation was not forbidden by section 7 of article IX of the Constitution, which reads: "The general assembly shall not authorize any county, city, borough, township or incorporated district to......obtain or appropriate money for or to loan its credit to, any corporation, association, institution, or individual." In the course of the opinion in that litigation we stated, "It is evident, from an examination of our cases on the subject, that no strictly legitimate municipal purpose was intended to be prohibited" by the Constitution, adding, "The evident purpose of the [constitutional] prohibition was to confine municipalities to the objects for which they were created and to restrain the legislature from authorizing any perversion of them." Then we said, there was no merit in the objection that the appropriation was to a private corporation rather than to a city department, if the councils "were satisfied, as they doubtless were, that the distribution of the fund would be better effected through the agency of the association than by an agency of their own creation," particularly where, as in that case, "the association was incorporated for the express purpose of administering such funds." See also Com. v. Barker, 211 Pa. 610, to the same effect. Again, in Com. ex rel. v. Pittsburgh, 183 Pa. 202, 209, this court decided that, where an appropriation was reasonable and the "purpose for which it was made was......not foreign to the material interests and general prosperity of the municipality," the appropriation was not beyond the power of councils to make nor contrary to the Constitution of the State; further, that the city might appropriate public

money for a proper municipal purpose to a committee of private persons appointed by the chamber of commerce.

In Stegmaier v. Goeringer, 218 Pa. 499, 501, 502, we said : "The custom of commemorating important historical, military, and civil events is as old as mankind, and at common law the right of municipalities to make appropriations out of the public funds for the proper observance of such occasions was recognized for centuries. There is no reason why a municipality, unless restricted by statute, should not be permitted to make reasonable appropriations in order to fitly commemorate public events in which all of the citizens thereof are, or should be, interested......Whether this be considered an inherent common-law power of every municipality, or whether it comes within the purview of the general welfare clause of the act [regulating cities of the third class]......the result is the same." These principles were recently discussed and approved by the New York Court of Appeals in Schieffelin v. Hylan, 236 N. Y. 254, 140 N. E. 689, although in that case the appropriation was disallowed because it was not to be subject to audit nor to municipal control of payment, and also because of a fatal defect in the passing of the ordinance. This New York case also differs from the one at bar in the fact that there was no curative legislation, such as appears here.

Historical Pageant Assn. v. Phila., 260 Pa. 447, is cited by appellant as supporting his contentions against the validity of the present ordinance. In that case we particularly based our ruling, setting aside the ordinance, on the grounds that the corporation seeking the appropriation was formed and the enterprise conducted "without official sanction of the [city] councils, [so as to make it] municipal in character," and the appropriation could not "be sustained [as] a moral obligation," the entertainment not having been authorized in advance by councils. These salient facts distinguish that case from the one now before us.

The court below well remarks: "That the 150th anniversary of the signing of the Declaration of Independence was a suitable occasion for the holding of a celebration of a public character, is a matter beyond question; historical events of importance have seldom the significance of this one." Appellant concedes the propriety of municipal participation in the sesquicentennial celebration, but contends that, since the exhibition conducted for that purpose was managed by a corporation other than the city itself, the latter could not legally make the appropriations under attack. In thus contending, appellant loses sight of the fact that the so-called private corporation was really an agency formed and incorporated for the purpose of carrying on a public undertaking of great magnitude, to which defendant city, under authority of law, had committed itself and pledged its honor and credit by resolutions of council long in advance of the event; he also loses sight of the fact that numerous creditors involved in this case parted with their money and property on the faith and credit of these pledges. The case cannot be looked upon from appellant's point of view, as one relating to a mere private corporation, in no proper sense aiding in the performance of a municipal undertaking, for such is not the fact. There can be no doubt that, under the cases hereinbefore considered, the celebration of the sesquicentennial fell within the scope of a public purpose for which the municipality could make proper appropriations, and that it might appropriate the money to an agency like the Sesqui-Centennial Exhibition Association, selected by the city to carry on the celebration.

In the case of Stegmaier v. Goeringer, supra, after making the ruling as to the right of a city to carry on a proper municipal celebration and to appropriate money to an outside body for that purpose, we added a warning, as follows: "This is an extreme exercise of municipal power which should be carefully guarded;......

when exercised, the committee of private citizens should present bills and vouchers showing for what purpose and how the moneys were expended, and these accounts should be examined and audited before warrants are drawn for their payment." Here the city council endeavored, in making appropriations, to follow the line of conduct thus set forth.

Section 10 of article XVII of the City Charter Act of June 25, 1919, P. L. 581, 609, provides that no liability shall be enforceable against the city for material furnished or for services rendered to it, unless there shall have been a previous appropriation by the council to pay for such materials or services: "Provided, however, that council may by ordinance authorize payment for material furnished or services rendered without a previous appropriation, if the same is agreed to by a two-thirds vote of all the members elected thereto and is approved by the mayor." The ordinance of December 17, 1926, was drawn and passed in accord with the requirements of the above proviso; but appellant questions whether the facts of the present case bring it within the letter of this section of the act, because the debts here in question were not incurred directly by the municipality itself. However that may be, the Act of July 11, 1923, P. L. 1037, specifically authorizes any city of the first class to borrow money and incur debts for any public exposition celebrating the sesquicentennial anniversary, and the Act of April 6, 1927, P. L. 123 (mentioned more at large in the next two paragraphs of this opinion) empowers the city to appropriate money to: pay for services already rendered and materials previously furnished on that account, whether directly to the municipality or to an agency such as the one which figures in this case; hence the ordinance of December 17, 1926, is validated without regard to whether or not it falls within the Act of 1919.

Appellant contends, however, that both the enabling Act of July 11, 1923, and the curative Act of April 6,

1927, are invalid as local and special legislation in violation of article III, section 7, of the Constitution. He says the first statute is special legislation because it refers to "one special and specific purpose," namely, authorizing the borrowing of money and the incurring of debts for a sesquicentennial celebration. The answer to this ground of attack is that the legislature of Pennsylvania at all times has the sovereign power (unless taken away by some prohibition in the Constitution) to authorize cities to incur indebtedness for an exhibition such as the sesquicentennial; albeit the exercise of such power leads to legislation covering a particular class of indebtedness, there is nothing in the Constitution prohibiting this kind of special legislation, if it can be properly so termed. If authority to borrow for the purpose authorized by the Act of 1923 had to be specifically conferred, legislative classification of cities according to the *purpose* for which money can be borrowed is valid wherever the purpose is one appropriate to a large city and not appropriate to a small one; and if the legislature thought that borrowing money for an international exhibition was an appropriate activity for big cities and not for little ones, it could classify on the basis of this distinction and say that cities of more than a million inhabitants may properly pledge their credit for this kind of a celebration, while cities with smaller population may not. This disposes of the contention that the Act of 1923 is special and local legislation. See also Kraus v. Phila., 265 Pa. 425, 436. As to the Act of April 6, 1927: An amendment to the Constitution, November 6, 1923 (see P. L. 1923 on page 1119, for text of this amendment), authorizes the legislature to classify cities and provides that laws for each class shall be deemed general: see Com. v. Wert, 282 Pa. 575, 581. The recognition by the legislature, after this amendment, of Philadelphia's prior designation as a city of the first class, is, as stated by the court below, "in effect a classification under the amendment." Hence the Act of 1927

cannot be said to be local legislation, nor, under our reasoning in discussing the constitutionality of the Act of July 11, 1923, supra, can it be held to be special legislation.

The objection by appellant that the debts authorized by the ordinance of December 17, 1926, were not actual debts of the city but were those of the Sesqui-Centennial Exhibition Association, is answered by the curative Act of April 6, 1927, supra, authorizing cities of the first class to pay for "work previously done, material previously furnished, or services previously rendered" in connection with the sesquicentennial celebration "up to......$5,000,000," "for or upon the order of any agency of said city, or......corporation not for profit incorporated under the laws of this Commonwealth for the purpose of holding or conducting the said exposition." This act shows that the legislature itself (Kennedy v. Meyer, 259 Pa. 306, 317) recognized debts of the character of those now before us as moral obligations of the city (Bailey v. Phila., 167 Pa. 569, 573), even though they were in fact incurred on the order of another corporation, acting as an "agency" of the city in the premises. The Sesqui-Centennial Exhibition Association was a corporation of the first class, or a corporation not for profit in the legal sense of that term, and as a matter of fact it had no capital, never anticipated reaping any profits, and made none. Though the association was never formally appointed an agent of the City of Philadelphia, it was "incorporated for the purpose of holding and conducting" the Sesqui-Centennial Exhibition, and undoubtedly was an "agency" in the sense of that term as used in the curative act we are now considering. Counsel for appellant, in making another point, himself says that all the directors of city departments were engaged in the management of the exhibition association, and that it always worked in coöperation with the municipal authorities. If, therefore, as the court below states, the city, in "carrying out [its]

pledges, chooses to recognize as moral obligations certain of the [sesquicentennial] accounts, remaining unpaid......, its power to do so cannot be impugned, provided it has the money legally available for the purpose."

We come now to the question of the legal availability of the $5,000,000 which the ordinance of December 17, 1926, provided for the payment of Sesqui-Centennial Exhibition Association bills. The loan from which this money was derived was first authorized by a vote of the electors on May 16, 1916. Under section 1 of the Act of April 3, 1923, P. L. 50, it is lawful for a city of the first class to transfer previously authorized loans when the original purpose of a loan becomes inadvisable and impracticable, if the purpose which the transfer is intended to accomplish was lawful at the time of the original authorization, and if the electors acquiesce by vote in the new purpose. An ordinance of city council, dated October 1, 1926, declaring the original purpose of the loan authorized in 1916 to be inadvisable and impracticable, provided for a vote of the electors to authorize a transfer to certain other purposes, among which was the one now attempted to be put into effect. The electors, on November 6, 1926, authorized the proposed transfer, and the question is whether the purpose then approved would have been lawful in 1916. Upon examination of the Act of March 11, 1789, section XVI (2 Sm. L. 462, 467), and our own decisions, hereinbefore enumerated, we are convinced that, under the general municipal powers recognized by the latter and the express power to make appropriations for such purposes "as shall be necessary or convenient for the government and welfare of the......city," conferred by the former, the council possessed ample authority to appropriate, in advance, even in 1916, for sesquicentennial purposes; in fact, that is about the time when preparations for an enterprise of this magnitude should have been commenced, if it were to be a success. There was nothing in the City Charter Law as it stood in 1916 to forbid the

borrowing of money for such a purpose if that course had been considered necessary at the time; but the subject need not be further pursued, for another curative act removed any doubt there might be as to the legality or regularity of the loan transaction now before us.   The Act of March 2, 1927, P. L. 7, validated all elections to approve a change of purpose of loans by cities of the first class and all bond issues of such cities in furtherance of sesquicentennial celebrations; it also waived and validated any defects in procedure connected with such elections or bond issues.   Appellant questions the constitutionality of this last-mentioned act; but the same reasons which sustain the Act of April 6, 1927, supra, make the present statute valid legislation.   To quote again from the opinion of the court below, "If [the Act of March 2, 1927] is a valid enactment, it must follow that [not only are] certificates of the controller [expressly] waived [but also] any other defects in procedure are cured."   See Swartz v. Carlisle Boro., 237 Pa. 473, 478, 479; Kennedy v. Meyer, 259 Pa. 306, 315, 316.   We conclude that the city legally raised the funds here in question; that they were available for appropriation; and that the disposal of them by the ordinance of December 17, 1926, cannot now be successfully objected to by appellant.

Of course the constitutional questions already decided in favor of defendants, had to be considered; with these out of the case, we would be led to an affirmance of the decree dismissing plaintiff's bill by the fact that for six years, namely, from the first municipal appropriation on April 19, 1921, until the filing of the bill on April 8, 1927, he sat idly by, while large sums of money were being raised, appropriated and expended by defendant city, and while contracts were being entered into, work performed, and materials furnished in reliance upon the city's definite pledges of financial support to the sesquicentennial exhibition, conducted for the municipality by the before-mentioned association.   Delay and laches

are fully as applicable to taxpayers as to other complainants in equity, and the rule forbidding relief in the face of undue delay may be invoked in cases which involve public interests. As said in Chew v. Phila., 257 Pa. 589, 599: "The rule of laches applies......from whichever point the proceedings may be viewed,— whether as a taxpayer's or property owner's bill; and, when the facts call for its application, the rule may control even in a case where there is involved a public improvement constructed without lawful authority (which we do not hold to be the fact in the present case)."

Finally, the fact must be kept in mind that it is not for the courts to determine whether the acts of assembly here depended on reflect a wise or proper policy, or, to put it more concretely, whether they can be used to cover alleged reckless public expenditures; though it is but fair to mention that the good faith of none of the present creditors is impugned on this record, it being conceded by appellant, as we were informed at argument, that the work and material claimed for were done and furnished, and by appellee, that the right of the controller to make proper audits is not questioned. So far as appears, the defendants, including the intervening creditors, are seeking merely to take advantage of the law ordained by the legislature and acted on by city council. As we said in Kraus v. Phila., 265 Pa. 425, 430, citing prior decisions, "A municipality is merely an agency instituted by the sovereign for the purpose of carrying out in detail the objects of government, and therefore the legislature may enlarge or diminish......its functions." The expediency of doing the particular things complained of by appellant, and the wisdom of granting the right to do them, have been passed on not only by the state legislature, but also by the city council, and, on at least one occasion, by the people at a general election, and always with approval. The statutes before us represent the sovereign will of the people, speaking through their legislature; the courts may consider

only whether they are constitutional, and whether the ordinances passed by the municipality accord with the powers thus conferred. Both these points must be decided in the affirmative, and, on the record before us, this is conclusive.

The decree is affirmed at cost of appellant.