WILLETT, PLAINTIFF, *v.* STATE BOARD OF EXAMINERS ET AL., DEFENDANTS.

(No. 8,238.)

(Submitted July 3, 1941. Decided July 5, 1941.)

[115 Pac. (2d) 287.]

318

Cause submitted on briefs of counsel.

*Mr. Lester H. Loble* and *Mr. Hugh R. Adair*, for Plaintiff.

*Mr. John W. Bonner*, Attorney General, and *Mr. Howard M. Gullickson*, First Assistant Attorney General, for Defendants.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an original proceeding to enjoin the issuance and sale of bonds as well as other threatened acts in carrying out the provisions of Chapter 79, Laws of 1941. Briefly summarized, that chapter authorizes the State Board of Examiners to cause to be constructed and furnished a building as an adjunct to the capitol building to be known as the ''Montana Veterans and Pioneers Memorial Building.'' The purpose of the building is to house books, records, documents and other property of veterans' organizations, the historical society of the state, the society of Montana pioneers, the sons and daughters of Montana pioneers, and as office quarters of the state headquarters of such organizations. The cost of the building and furnishing was provided to be not in excess of what could be realized from the sale of a $250,000 bond issue.

The Act provides that the bonds should bear interest at four per cent. per annum, payable semiannually, and that they should be payable over a period of not exceeding twenty years

as the Board of Examiners might determine. It further provided that the bonds shall not be sold for less than par plus accrued interest to the date of their delivery. The Act provides that the bonds shall be payable out of two funds only: First, from moneys now in the veterans' memorial fund created by section 4559, Revised Codes, after the payment of the expenses of the state athletic commission and the salary of its secretary, with a proviso that a portion of the bonds equal to the cost of furnishing the building shall be paid and retired exclusively out of the money in that fund. The second source of revenue out of which the bonds are to be retired is provided for in the Act as follows:

"Second, under the provisions of Chapter 133, session laws of the twenty-sixth legislative assembly of the State of Montana of 1939, entitled, 'An Act authorizing the issuance of bonds of the State of Montana to refund the capitol building bonds of said state and held by the state board of land commissioners, and providing for the payment thereof,' an issue of six hundred thirty-two thousand ($632,000.00) dollars of capitol building refunding bonds of the State of Montana has been issued. Said bond issue is in serial bonds, the last of which matures in 1944. Said bonds are payable in part from the income derived from the capitol building land grant. When said capitol building refunding bonds have been paid in full, all the said income received from said capitol building land grant shall be and the same is hereby perpetually dedicated and appropriated for the payment of the principal and interest of the bonds provided for by this Act. After the payment of said capitol building refunding bonds, any balance remaining in the capitol building interest and sinking fund shall likewise be and the same is hereby pledged and appropriated for the payment of the principal and interest of the bonds authorized by this Act." (Section 7.)

The validity of the Act is questioned upon the ground that the issuance and sale of the bonds at this time is premature and that the board should postpone the issuance and sale of the bonds until the moneys in the capitol building refunding

bond sinking and interest fund are sufficient to pay the principal of all outstanding capitol building refunding bonds and the interest thereon, which is conceded will not come to pass until in 1944.

It is contended that because of that part of section 2, Article ▇▇▇ XIII of the Constitution, which provides that a law creating a debt shall "provide for the levy of a tax sufficient to pay the interest on, and extinguish the principal of such debt within the time limited by such law for the payment thereof," the fundamental law has been violated since there is no means for providing for the payment of interest on the bonds accruing prior to 1944. It does not appear here that the veterans' memorial fund will be inadequate to furnish the building and pay the interest on the bonds accruing prior to 1944. In the absence of a contrary showing, the presumption is that the provision for payment will be and is sufficient. (*Martin* v. *State Highway Commission*, 107 Mont. 603, 88 Pac. (2d) 41; *State ex rel. Bonner* v. *Dixon*, 59 Mont. 58, 195 Pac. 841.) Moreover, it will be noted from what we have to say later in this opinion that under the facts here considered no debt is created within the meaning of section 2, Article XIII of our Constitution. The legislature has the power to do anything that is not expressly prohibited by the Constitution. The contention that the issuance of the bonds at this time is premature raises a question, not of power, but of wisdom and discretion. The legislature having the power, we may not inquire into the wisdom of the legislation.

Plaintiff contends that Chapter 79 is in conflict with section ▇▇▇ 1, Article XIII of the Constitution. That section reads: "Neither the state, nor any county, city, town, municipality, nor other subdivision of the state shall ever give or loan its credit in aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association or corporation, or become a subscriber to, or a shareholder in, any company or corporation, or a joint owner with any person, company or corporation, except as to such ownership as may accrue to the state by operation or provision of law."

This contention is without merit. It is true that the veterans' organizations, the Montana Pioneer Society and the Sons and Daughters of Montana Pioneers will derive benefit from the proposed building. However, the building will be owned by the State of Montana as an adjunct to the capitol building. These are all nonprofit organizations existing for the purpose of perpetuating the memory of war veterans and pioneers, and of accumulating and preserving data and relics of historical interest for the benefit of all the people of the state. The test to be adopted in determining whether a donation or grant is prohibited under this section is whether the donation or grant is for a public purpose. (*Furlong* v. *South Park Com'rs*, 340 Ill. 363, 172 N. E. 757; *Sambor* v. *Hadley*, 291 Pa. 395, 140 Atl. 347, 349; *Hager* v. *Kentucky Children's Home Society*, 119 Ky. 235, 83 S. W. 605, 608, 67 L. R. A. 815; *Boehm* v. *Hertz*, 182 Ill. 154, 54 N. E. 973, 48 L. R. A. 575; *Hagler* v. *Small*, 307 Ill. 460, 138 N. E. 849, 854; *State ex rel. Wisconsin Development Authority* v. *Dammann*, 228 Wis. 147, 277 N. W. 278, 280 N. W. 698; *Conway* v. *New Hampshire Water Resources Board*, 89 N. H. 346, 199 Atl. 83.) What is a "public purpose" is a question primarily for legislative determination, with which we will not interfere unless there has been a clear abuse of power. (*People ex rel. Douglas* v. *Barrett*, 370 Ill. 464, 19 N. E. (2d) 340.) That the project here is for a public purpose there can be no reasonable doubt; at least we cannot say that the legislature abused its power in so determining. The fact that the named organizations incidentally derive special benefit from the project does not bring the Act in conflict with section 1, Article XIII.

The next point raised is that the Act authorizes the creation of a debt contrary to section 2, Article XIII of the Constitution. That section prohibits the creation of a debt in excess of $100,000 unless the law authorizing it shall have been submitted to the people. However, it should be noted that the bonds authorized by Chapter 79 are not an obligation payable from the general fund of the state of Montana. The bonds are expressly made payable from the two funds named in the Act,

and the Act does not contemplate the levy of any taxes for the purpose of discharging the bonds. When bonds are made payable from a fund in being, and where they will not involve the levy or collection of any additional tax, there is no debt created within the meaning of section 2 of Article XIII. (*State ex rel. Veeder* v. *State Board of Education,* 97 Mont. 121, 33 Pac. (2d) 516; *State ex rel. Blume* v. *State Board of Education,* 97 Mont. 371, 34 Pac. (2d) 515; *Geboski* v. *Montana Armory Board,* 110 Mont. 487, 103 Pac. (2d) 679; *Rutherford* v. *City of Great Falls,* 107 Mont. 512, 86 Pac. (2d) 656.)

The next point is that by pledging the income from the lands granted to the state by section 12 of the Enabling Act for the purposes provided in Chapter 79, the legislature has trangressed sections 12 and 17 of the Enabling Act, in that it is contended the income from such lands shall be devoted exclusively for buildings for the legislative, executive and judicial branches of the government. This contention overlooks the fact that the proposed building will be used for assembling historical data, and will be useful and beneficial to the executive and legislative departments of the state. It should also be noted that the Historical Society of Montana is a department of the state government. (Sec. 1563.1, Rev. Codes.) The proposed building will provide space for housing the books, records and documents of the Historical Society which are now occupying a portion of the capitol building. The Act does not transcend the provisions of the Enabling Act.

Finding no merit in any of the contentions raised by the plaintiff, the relief sought is denied and the proceeding dismissed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ERICKSON, ANDERSON and MORRIS concur.