VETERANS' WELFARE COMMISSION of the State of
Montana, RUSSELL W. LINDBORG, WALTER BAR-
NARD, JOSEPH H. GRENIER, CHARLES DAVIDSON
and NORMAN HAZELWOOD, as Members of and Consti-
tuting said Veterans' Welfare Commission of the State
of Montana, and HARRY E. SAWYER, Director of the
Veterans' Welfare Commission of the State of Montana,
Plaintiffs, *v.* Department of Montana, VETERANS OF
FOREIGN WARS of the UNITED STATES, a Corpora-
tion, and DISABLED AMERICAN VETERANS, Depart-
ment of Montana, a Corporation, Defendants.

No. 10497
Submitted January 15, 1963. Decided February 6, 1963.
Rehearing denied March 14, 1963.
379 P.2d 107.

502

Johnson & Johnson, John A. Alexander, Butte, Howard A. Johnson (argued), Butte, Charles Davidson (argued), Great Falls, for plaintiffs.

Louise Rankin and John Mahan (argued), Helena, for defendants.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an original proceeding before this court wherein the Veterans' Welfare Commission of the State of Montana, hereinafter referred to as the Commission, seeks a declaratory judgment determining whether the line appropriations in House Bill No. 454 of the Thirty-Seventh Legislative Assembly, Laws 1961, p. 761, of $6,000 annually during the fiscal biennium, 1961-1963, for ''Payment of secretarial services to those veterans' organizations maintaining full-time service offices at Fort Harrison, Montana'', are constitutional.

The two defendants are the Department of Montana, Veterans of Foreign Wars of the United States, a component of a nationally chartered organization, hereinafter referred to as the V.F.W., and Disabled American Veterans, Department of Montana, a Corporation, hereinafter referred to as D.A.V. It is conceded that both defendants are the only veterans'

organizations maintaining offices at Fort Harrison, that each defendant is a corporation or organization not under the absolute control of the State of Montana, and that no part of the line-item appropriation has been paid.

House Bill No. 454 is entitled:

"An Act to Appropriate Money for the Operation and Maintenance of Certain State Agencies for the Period Beginning July 1, 1961 and Ending June 30, 1963."

So far as applicable Section 3 of H.B. 454 is as follows:

"Section 3. The following sums are appropriated out of any moneys in the state treasury, and from the special funds enumerated herein not otherwise appropriated, for the designated purposes for the period beginning July 1, 1961 and ending June 30, 1962. * * *

"VETERANS WELFARE COMMISSION

"FROM THE GENERAL FUND

"Salary of director, seven thousand two hundred dollars
$7,200.00

"Operation, one hundred thirteen thousand six hundred fifty-one dollars $113,651.00

"Payment of secretarial services to those veterans' organizations maintaining full-time service offices at Fort Harrison, Montana $6,000.00"

Section 4 provides identical appropriations from the general fund for the period beginning July 1, 1962, and ending June 30, 1963, except that the appropriation for operation is some $5,000 larger.

H.B. 454 is purely an appropriation bill and neither its title nor its substance contains a reference to any other subject or purpose.

In order to put perspective on our consideration of this question, we shall recite the history of the litigation as it appears from the pleadings, returns and briefs in this cause.

In March 1962, the V.F.W. and D.A.V. instituted mandamus proceedings in the district court to compel the Commission

to pay to the private organizations or their employees, the amounts mentioned in the line-item appropriations, viz., $6,000, at the rate of $250 per month. The Commission moved to dismiss the proceedings on two grounds:

(1) That the line-item appropriations were unconstitutional, and

(2) That even if valid, their expenditure was discretionary and not mandatory.

As to this second ground, the V.F.W. and D.A.V. both conceded, on oral argument before this court, that the expenditure is discretionary.

In two previous appearances before us this was not conceded. Likewise in the district court mandamus action, the opposite assertion was made.

In May 1962, the district court denied the motion to dismiss. The Commission declined to further plead with the specific purpose of appealing from a judgment of a peremptory writ of mandate. No judgment was entered, as such, on the mandamus proceeding, but what was termed a judgment declared the line-item to be constitutional.

The matter was then brought to this court on an original proceeding. We accepted original jurisdiction and allowed a complaint to be filed by the Commission, which complaint seeks a declaratory judgment as to the validity of the line-item appropriations. Answers were filed by both the V.F.W. and D.A.V. It was represented to the court by all parties that the matter would be presented on an agreed statement of facts. However, facts could not be agreed to, and the court has retained jurisdiction to determine the matter on the *face* of the appropriation bill with whatever non-disputed explanatory facts are necessary.

We are aware, it being conceded as it must be, that whether the expenditure is made is discretionary, may seem to remove the cause from the category of a justiciable controversy. Yet, because of the public problem involved, and in

order that future litigation may be avoided, we shall determine the constitutional question of H.B. 454 of the Thirty-Seventh Legislative Assembly.

Now, as to the facts surrounding the issue. In reciting these, we are mindful that the Commission and both defendants, the V.F.W. and the D.A.V. dispute certain items, not as to all of the facts, but rather as to their relevancy and materiality. Also, we shall relate facts as if only one defendant rather than two are involved.

The Commission was originally created by Chapter 105, Session Laws 1919. The Act was rewritten in 1945. The present statutes relating to the existence and duties of the Commission are set forth as sections 77-1001 to 77-1011, R.C.M.1947.

Section 77-1002 provides in part:

"It shall be the duty of the commission and it shall have power to establish a state wide service for discharged veterans and their families; to actively cooperate with state and federal agencies having to do with the affairs of veterans and their families; and to promote the general welfare of all veterans and their families. In carrying out the purposes of this act the commission may employ a director, service officers, assistants, clerks, or other personnel, all of whom must be residents of the state of Montana, prescribe their duties and fix and pay their compensation; and establish a state headquarters and such other offices as may be necessary to carry out the purposes of this act."

The D.A.V. has since 1945 maintained a full-time service office at Fort Harrison with a full-time service officer accredited by the United States Veterans Administration to represent veterans and their dependents.

Further, the Commission in March 22, 1949, employed Elizabeth K. Mason as a secretary assigned to the service office maintained by the D.A.V., and her salary was paid by the Commission until August 1, 1959, a period of slightly more than ten years.

Further, by reason of reduced appropriations in 1959, the Commission discontinued on August 1, 1959, payment of the salary of the secretary they had selected and assigned to the D.A.V. service office.

It is alleged that the D.A.V. and V.F.W. appeared before the House Appropriations Committee requesting an appropriation for the Commission to continue to provide secretarial services to the D.A.V. service office at Fort Harrison, and that a specific appropriation was made for this purpose.

Thus, when the Thirty-Seventh Legislative Assembly met in January and February 1961, no secretarial services were being furnished by the Commission, nor had any been furnished since August 1959.

Before proceeding with our discussion of the issues, we shall briefly review some of the rules of construction of statutes as to constitutional questions. A statute will not be declared invalid unless, in the judgment of the court, its unconstitutionality is shown beyond a reasonable doubt. Tipton v. Sands, 103 Mont. 1, 60 P.2d 662, 106 A.L.R. 474; State v. Stark, 100 Mont. 365, 52 P.2d 890; and see Cottingham v. State Board of Examiners, 134 Mont. 1, 328 P.2d 907, for further discussion and cases. Further, that the court will, if possible, ascertain and carry into effect the intention of the Legislature. Such intention will be gathered from the terms of the statute considered in the light of the surrounding circumstances. State ex rel. Haynes v. District Court, 106 Mont. 470, 479, 78 P.2d 937, and cases cited therein, and see Parker v. County of Yellowstone, 140 Mont. 538, 374 P.2d 328; Garden Spot Market, Inc. v. Byrne, Bd. of Equalization, 141 Mont. 382, 378 P.2d 220.

However, although every reasonable doubt must be resolved in favor of legislative action, courts will not hesitate to defend constitutional inhibitions against clear statutory violations. Stanley v. Jeffries, 86 Mont. 114, 284 P. 134, 70 A.L.R. 166.

■ Looking now to the face of H.B. 454, and respecting the title and pertinent language:

"An Act to Appropriate Money for the Operation and Maintenance of Certain State Agencies" for the biennium. Now the line item: *"Payment of secretarial services to those veterans' organizations maintaining full-time service offices at Fort Harrison, Montana..............................$6,000.00"* Emphasis supplied.

Article V, § 35, Constitution of Montana, so far as pertinent, provides:

"No appropriation shall be made for charitable, industrial, educational or benevolent purposes to any person, corporation or community not under the absolute control of the state * * *."

For our immediate purpose, keeping in mind that H.B. 454 is strictly an appropriation measure, it appears that the line item is an appropriation for a charitable or benevolent purpose to corporations, not under the absolute control of the state, and is therefore prohibited by Article V, § 35.

Article XIII, § 1, provides in part:

"Neither the state, * * * shall ever give or loan its credit in aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association or corporation * * *."

Here again, on its face, appears an express inhibition against the line-item appropriation as it appears that it is a donation or grant to a corporation or organization.

But the contention of the V.F.W. and the D.A.V. is that *any legislation,* including an appropriation measure, without any purpose declared by the Legislature on behalf of veterans, is a *public purpose* and therefore not subject to the inhibitions expressed above. For this proposition they cite State ex rel. Graham v. Board of Examiners, 125 Mont. 419, 239 P.2d 283; Mills v. Stewart, 76 Mont. 429, 247 P. 332, 47 A.L.R. 424; and Willett v. State Board of Examiners, 112 Mont. 317, 115 P.2d 287.

■ We need not be concerned as to whether the line-item

appropriation is or is not for a public purpose, or whether or not such a public purpose can be established by a line-item appropriation attempt. For the purposes of this opinion, we shall assume it to be for a public purpose in some sense.

In Hill v. Rae, 52 Mont. 378, 158 P. 826, L.R.A. 1917A, 495, this court held unconstitutional, under both section 35 of Article V, and section 1 of Article XIII, an appropriation of $20,000 as a guaranty fund for the payment of interest on farm-loan bonds against the contention that it was for a public purpose. This court at page 389 of 52 Mont., at page 831 of 158 P., said:

"* * * It will not suffice to say that, the general purposes of the Act being to foster agriculture, and thus to promote the public welfare, such purpose is a public one; in the broad sense considered above it is so, and so likewise are all the purposes mentioned in section 35 of Article 5; yet money for them may not be appropriated unless the specific objects are under the absolute control of the state. The ultimate purpose of the Farm Loan Act comes fairly within the term 'industrial,' as used in section 35 of Article 5; but it is not, so far as the use of this fund is concerned, under the absolute control of the state, for the obvious reason that the state cannot direct the conduct or judgment of mortgagors in the handling of their property nor participate or prevent the cases of default which are to be the occasion for such use."

In State ex rel. Browning v. Brandjord, 106 Mont. 395, 400, 403, 404, 81 P.2d 677, the question was whether under Article V, § 35, the State Board of Public Welfare could properly issue to Joseph E. Parker, Administrator of the Federal Works Progress Administration for Montana, one check in the sum of $150,000, payable to the Treasurer of the United States, in payment for the purchase of materials, equipment, supplies and other non-labor costs on Works Progress Administration Projects. There this court said:

"It is the theory of relator's case that the Public Welfare

Board was without authority to make disbursements for the purpose set forth in the resolution, and that, even if the authority existed, no valid contract was in existence for which these disbursements were made in discharge of an existing contractual obligation, and, hence, the check, if delivered, would amount to a donation within the provision of section 35, Article 5, of the Constitution. * * *

"The Public Welfare Board may under these statutes contract with a governmental agency, such as the Works Progress Administration, to furnish certain materials necessary to insure the institution and completion of projects reasonably designed to furnish relief to the unemployed in the form of work. This board is bound to supervise the expenditure of the funds appropriated by the state for its use. When the board delivers funds to the federal agency to be expended by it for materials to be thereafter purchased, and for use on projects to be thereafter selected, it is not administering or supervising the expenditure of these funds. * * *

"If the board in the exercise of its discretion desires to furnish materials for a project, it should furnish them and not merely turn over to some governmental agency or officer a sum of money to be expended by it or him when or where it or he pleases. Such an agency would in such event be exercising the functions which chapter 82 contemplates should be performed by the board. The Public Welfare Board would under such an arrangement not be supervising and administering the funds appropriated but merely delivering the funds entrusted to it to be supervised and administered by an agency not answerable to the State of Montana.

"Accordingly, we must hold that the respondent Board, on the record before us, was without authority to authorize the delivery of the check."

In other words, even though the person or corporation is expected to use the funds for a valid public purpose, Article V, § 35, *forbids its donation to an instrumentality not under the*

*absolute control* of the state for such use. If the instrumentality is not under the control of the state, neither is its expenditure of funds. Accordingly, gifts to such instrumentalities, even for ostensibly public purposes, are forbidden by the provision.

In Cramer v. Montana State Board of Food Distributors 113 Mont. 450, 453, 129 P.2d 96, this court held a statutory provision for the payment of license fee moneys to the private association unconstitutional as a gift in violation of Article XIII, § 1. The court said:

"In interpreting the above constitutional provision we are guided by prior decisions of this court. It has been held that the inhibition of the state Constitution against making donations by the state or any subdivision thereof, or loaning its credit to any individual, corporation, etc., is both mandatory and prohibitory. State ex rel. Mills v. Dixon, 66 Mont. 76, 213 P. 227. * * *

"Is is urged that the Association is not within the purview of section 1, Article XIII, because the use to be made of the moneys turned over to it will be purely for a public purpose. Upon an examination of the language of the provision we find that the restriction is not to the use to which moneys may be put, but to the nature or capacity of the recipient. It specifies 'individual, association or corporation.' * * *

"In this case we have a private corporation and, though beneficent as it may be in regard to the raising of the food standards, yet it comes within the restriction of section 1 of Article XIII. The respondents refer us to the cases of Rutherford v. City of Great Falls, 107 Mont. 512, 86 P.2d 656, and Geboski v. Montana Armory Board, 110 Mont. 487, 103 P.2d 679, and Cloud County Farm Bureau v. Board of Commissioners, 126 Kan. 322, 268 P. 91, as authority for the proposition that a portion of the license fee can properly be disbursed by the Montana Food Distributors Association. *However, the distinction between those cases and the case at bar is the dis-*

*tinction between a private corporation and a public corporation, the functions of the latter of the two being under the control of the state. In all three of the cases above referred to the court was careful in pointing out that the agency was a public corporation under the control of the state and in the nature of a municipal corporation."* Emphasis supplied.

In Sjostrum v. State Highway Commission, 124 Mont. 562, 567, 228 P.2d 238, the question was the validity of a statute empowering the Commission to contract with the Great Northern Railway Company to reimburse it for the cost of keeping a railway bridge open to highway travel free of tolls, which could assuredly be considered a public purpose, since it was for the use of the general public. This court, speaking through Mr. Chief Justice Adair, said:

"The Constitution prohibits both the state and the county from ever becoming a joint owner with the railway corporation in the bridge or from becoming a shareholder in such corporation or from making any donation or grant, by subsidy or otherwise, to such corporation. Const., Art. XIII, § 1.

"The above express inhibitions are both mandatory and prohibitory. State ex rel. Mills v. Dixon, 66 Mont. 76, 84, 213 P. 227."

Under all these decisions of our court, the line-item appropriation, on its face, is invalid under Article V, § 35, and Article XIII, § 1. The V.F.W. brief in this case makes clear what the line-item appropriations are for in this statement: "Finally, we submit, that the services performed by these service officers, [for whom the secretarial services are performed] which is identical to that performed by the Veteran's Welfare Commission, relieve the Montana state taxpayer considerably, due to the thousands of files handled, which otherwise would be the burden of the State Commission." In other words, they say that the payment to the organizations for secretarial services is to do work that the state would otherwise have to do. Even accepting this statement as the fact, the

organizations are not under the absolute control of the state as discussed in the cases, supra.

But the contention of the V.F.W. and D.A.V. is that if we look to the surrounding facts and circumstances in an effort to determine the legislative intent, we shall find that the line-item appropriation is not made to the organizations but rather to the Commission. Therefore, the secretaries are employees of the Commission and thus avoid the constitutional inhibitions discussed. Even though at this point we shall assume the facts to be as put forth by the V.F.W. and D.A.V., we realize that the Commission disputes some of them. The V.F.W. and D.A.V. reason that since the Commission had in fact assigned secretaries employed by the Commission for a ten-year period up to August 1959, and that during that time the secretaries were under the absolute control of the Commission and only doing work otherwise done by the state, that the Legislature must have intended to reinstate that service in a manner still within the absolute control of the state.

This reasoning falls because: (1) at the time the Legislature met, no such services were being furnished nor had they been furnished for one year and a half. We cannot stretch the theory of determining legislative intent to a particular section of previous history; (2) it is contrary to the wording used; (3) the purpose was not declared, viz., it was a general appropriation measure; and (4) even if the reasoning is accepted, the Legislature could not do by indirection that which they are specifically prohibited from doing directly.

The V.F.W. and D.A.V. rely in large part upon the previously cited case of Willett v. State Board of Examiners, supra, 112 Mont 317, 115 P.2d 287. In that case, the question was as to whether a bond issue for the construction of a public building, the Veterans and Pioneers Memorial Building, to be owned and controlled absolutely by the State as an adjunct to the State Capitol would violate Section 1 of Article XIII, because

the proposed building would "house books, records, documents and other property of veterans' organizations, the historical society of the state, the society of Montana pioneers, the sons and daughters of Montana pioneers, and as office quarters of the state headquarters of such organizations." There the court at p. 322, 115 P.2d at p. 289, said:

"This contention is without merit. It is true that the veterans' organizations, the Montana Pioneer Society and the Sons and Daughters of Montana Pioneers will derive benefit from the proposed building. However, the building will be owned by the State of Montana as an adjunct to the capitol building. These are all nonprofit organizations existing for the purpose of perpetuating the memory of war veterans and pioneers, and of accumulating and preserving data and relics of historical interest for the benefit of all the people of the state. The test to be adopted in determining whether a donation or grant is prohibited under this section is whether the donation or grant is for a public purpose. [Citing cases.] What is a 'public purpose' is a question primarily for legislative determination, with which we will not interfere unless there has been a clear abuse of power. [Citing case.] That the project here is for a public purpose there can be no reasonable doubt; at least we cannot say that the legislature abused its power in so determining. The fact that the named organizations incidentally derive special benefit from the project does not bring the Act in conflict with section 1, Article XIII."

The court did not rule on the question whether the free use of the building after its construction might constitute an unconstitutional gift under section 1 of Article XIII.

We have not discussed cases cited from foreign jurisdictions, but note that California and Oklahoma under similar constituutional provisions in Frohliger v. Richardson, 63 Cal. App. 209, 218 P. 497, and in Veterans of Foreign Wars, etc.

v. Childers, 197 Okl. 331, 171 P.2d 618, made the same conclusion as we do here.

But one other case needs consideration. The V.F.W. and D.A.V. cite us to State ex rel. Dickman v. Defenbacher, 164 Ohio St. 142, 128 N.E.2d 59. Under unique constitutional provisions in Ohio, where any two Supreme Court Justices may sustain constitutionality as against the other five, that court found a direct appropriation to eight veterans' organizations valid. We can only observe that such a result could not happen under our constitutional provisions.

By what has been heretofore said, it is clear beyond reasonable doubt that the line-item appropriations ''Payment of secretarial services to those veterans' organizations maintaining full-time service offices at Fort Harrison, Montana'' are unconstitutional and it is so declared.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, ADAIR, and the HONORABLE NAT ALLEN, District Judge, sitting in place of MR. JUSTICE DOYLE, concur.