The Honorable Susan Schulte State Representative 18 Sunbeam Circle Cabot, Arkansas 77023-2000
Dear Representative Schulte:
I am writing in response to your request for an opinion on the legality of a particular expenditure of municipal funds. You have attached correspondence with your request explaining that the Cabot City Council voted to commemorate the passing of a Cabot resident killed in Iraq in October of 2004. The City Council voted unanimously to issue a proclamation offering condolences to the family and to send flowers along with the proclamation. The correspondence indicates that the original proclamation was framed prior to presentation to the family. The City also sent flowers to the family at a cost of $105.00. The correspondence does not indicate whether the flowers were displayed at the soldier's funeral, although the proclamation was read at the funeral service. The City made an inquiry to the Division of Legislative Audit prior to the expenditure of the funds for flowers and Division personnel referred City officials to Op. Att'y Gen. 91-410 as a possible impediment to the expenditure. You have therefore asked whether the "city can use public funds to pay the costs of this commemoration."
RESPONSE
Opinion 91-410, among other things, addresses the legality of municipal expenditures for flowers for public officials, employees, their families or other persons in case of sickness, death, birthdays or other reasons. It did not specifically involve or address the purchase of flowers for the families of soldiers killed while on active duty. I have not found any statutory or case law authority expressly addressing this latter issue. In my opinion the issue will turn upon whether the expenditure is for a proper public or municipal purpose under Arkansas Constitution, art. 12, § 5; A.C.A. § 14-58-303; and the "public purpose doctrine." Municipal officials are granted some measure of discretion in determining whether expenditures are for proper municipal purposes and their determinations will not be set aside lightly. In my opinion, based upon the limited case law available, the expenditure of public funds for the commemoration of the death of a soldier killed while on active duty comes more nearly within a public or municipal purpose than the expenditures addressed in Opinion 91-410. The resolution of the issue will always turn upon the particular facts, however.
Opinion 91-410, in pertinent part, first noted the potentially applicable legal provisions, including Arkansas Constitution, art. 12, § 5; art. 16, § 13; A.C.A. § 14-58-303; and the "public purpose doctrine." Article 12, § 5 provides that: "No county, city, town or other municipal corporation, shall become a stockholder in any company, association, or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual." Article 16, § 13 authorizes citizens of counties, cities and towns to institute suit to protect inhabitants from the enforcement of "illegal exactions," and A.C.A. § 14-58-303 authorizes the mayor of cities of the first class to make purchases of all supplies, equipment, materials and other things requisite for public purposes in the city. The so-called "public purpose doctrine" is a constitutional common law doctrine restricting public expenditures to primarily public purposes with any benefit to a private individual or entity being merely incidental. Opinion 91-410 explained the doctrine as follows:
 The determination of this issue will, in my opinion, ultimately involve an analysis of whether the use of public funds for this purpose violates the broad, but often difficult to define "public purpose" doctrine, which generally requires that the expenditure of public funds be for a "public purpose." See generally Chandler v. Board of Trustees of the Teacher Retirement System of the State of Arkansas, 236 Ark. 256, 365 S.W.2d 447 (1963), and Cf. specifically South Carolina Op. Att'y Gen. issued April 24, 1987. It has been stated as regards this doctrine that "[n]o expenditure can be allowed legally except in a clear case where it appears that the welfare of the community and its inhabitants is involved and direct benefit results to the public." McQuillin, Municipal Corporations, § 12, 190. The determination of whether a particular expenditure is for a "public purpose" is to be made by the legislature. Although ultimately the propriety of a particular expenditure is resolved by the judiciary, great weight must be given legislative declarations of public purposes. Turner v. Woodruff, 286 Ark. 66, 689 S.W.2d 527 (1985).
My predecessors have had occasion to address various municipal expenditures over the years and have noted that the resolution of particular questions in this regard will turn upon the facts of each case (Op. Att'y Gen. 94-397) and must necessarily be decided upon a case-by-case basis. See Op. Att'y Gen. 92-179. My predecessors have also given wide discretion to local officials to determine proper public purposes. Id. It has been stated that:
 The court will give weight to a legislative determination of what is a municipal purpose. It has been laid down as a general rule that the question of whether the performance of an act or the accomplishment of a specific purpose constitutes a "public purpose" for which municipal funds may be lawfully disbursed rests in the judgment of the municipal authorities, and the courts will not assume to substitute their judgment for that of the authorities unless the latter's exercise of judgment or discretion is shown to have been unquestionably abused.
64A CJS Municipal Corporations, § 1573(b), at 99 (footnotes omitted).
With regard to expenditures for flowers for public officials, employees, their families and other persons, Opinion 91-410 concluded generally that:
 In response to your fifth question concerning flowers, cards and gifts for employees and other persons, it is my opinion, similarly, that most of these expenditures would run afoul of art. 12, § 5's prohibition against appropriating funds to individuals. These purchases should thus generally be made with private funds. See generally Golder v. Salter, 107 So.2d 348 (Miss. 1958) (as to Christmas gifts for employees); Texas Op. Att'y Gen. No. JM-391 (1985) (regarding flowers for sickness or death); Mississippi Op. Att'y Gen. issued May 10, 1984 (regarding flowers for sickness or death); and Texas Op. Att'y Gen. No. MW-36 (1979) (regarding the sending of Christmas cards).
 Again, individual facts and circumstances may vary the analysis and result.
Id. at 5.
In a companion opinion to Opinion 91-410, Op. Att'y Gen. 91-411, which involved school district expenditures, it was similarly noted that:
 Of course, I cannot hypothesize all possible instances in which expenditures of public funds for these purposes might arise. There may be some instances where what may be technically referred to as "gifts" are not constitutionally impermissible. It is conceivable, in my opinion, that such gifts as plaques or "certificates of appreciation" for employees or other persons rendering aid and services to the schools would not be constitutionally impermissible, even if accepted by individuals. These issues will best resolve themselves by reference to each on a case-by-case basis.
Id. at 6.
As indicated above, Opinion 91-410 did not address the expenditure of municipal funds for the commemoration of the death of a soldier killed while on active duty. I have not found any statutory or case law authority expressly addressing this circumstance. To the extent, however, that the municipal expenditures aided in a public commemoration of the soldier's death (e.g., the funeral or other memorial), some case law from other jurisdictions may be instructive.
For example, in Stegmaier v. Goeringer, 218 Pa. 499, 67 A. 782 (1907), we find the following:
 The custom of commemorating important historical, military and civil events is as old as mankind, and at common law the right of municipalities to make appropriations out of the public funds for the proper observance of such occasions was recognized for centuries. There is no reason why a municipality, unless restricted by statute, should not be permitted to make reasonable appropriations in order to fitly commemorate public events in which all of the citizens thereof are, or should be, interested.
Id. at 782.
The court also stated, however, that:
 It must not be understood, however, that because in a proper case, and for a proper purpose, a municipality has the power to make such an appropriation it can do so without any limitations or restrictions. The general rule that a public corporation cannot make a contract to provide an entertainment for its citizens or guests is freely conceded; also that it is not within the power of cities of the third class to make appropriations for expenses incurred in providing refreshments, entertainments and dinners for delegates to a convention; or for entertaining guests at a supper or ball; or, indeed, for the purpose of extending hospitality or furnishing social pleasures either to citizens or invited guests. While these limitations have been very properly imposed upon municipalities, it does not follow that they do not have the power to make an appropriation to fittingly decorate and otherwise ornament the streets and public buildings, and to provide suitable conveniences for the accommodation of the public in the enjoyment of the ceremonies incident to the occasion.
Id. at 783.
In another case, Schieffelin v. Hylan, 236 N.Y. 254, 140 N.E. 689
(1923), the following was stated:
 When we survey the field of municipal activities we see that some things are so inherently necessary for the welfare of the inhabitants of a municipality that nobody would think of questioning their inclusion in city purposes. Such for instance are the construction of school-houses and the maintenance of streets and sewers. Other things while perhaps a little less necessary have come to be viewed as so contributing to the comfort and happiness of citizens that no one is now disposed to question that they accomplish a city purpose. Such are parks, recreational grounds and public baths. Then there is another class of purposes of a public nature still farther removed from the justification of absolute necessity which would include the erection of monuments in commemoration of events of public importance or in honor of individuals or classes of individuals who have greatly benefited the nation, state or municipality by their accomplishments or sacrifices,
the suitable entertainment of distinguished visitors representing some foreign nation or coming upon some public mission, the appropriate welcome of soldiers returning from war and, as pertinent in the present case, the celebration of an anniversary important in national, state or local history. No one of these things is justified by the compulsion of necessity and yet they are of such a character and, when well and properly conducted, serve such purposes that we think a widely prevailing judgment has come to recognize them as acts which may be carried out by a municipality with the expenditure of public moneys.
* * *
 We can take judicial notice of the fact that throughout the state monuments have been erected in honor of soldiers of former wars; that constantly by decorations and other means municipalities are celebrating anniversaries such as that of the Declaration of Independence and that within a short time past appropriate welcome was being given by municipalities to our returning soldiers.
Id. at 692 (emphasis added). See also, Audit Report of Bristol for Year1967, 57 Pa. D C 2d 18 (1972) ("it has long been recognized as lawful in Pennsylvania for a city or town to appropriate moneys for the observation of an important historical, military or civic event," citingSambor v. Hadley, 291 Pa. 395, 403 (1928)).
As an additional matter, at the federal level, the Secretary of Veterans Affairs is authorized to provide flags to drape the caskets of certain veterans, which are then given to the next of kin. He is also authorized to provide funeral expenses in certain cases and government headstones or markers for deceased veterans under certain circumstances. See38 U.S.C. §§ 2301; 2302 and 2306. Obviously, these expenditures are thought to fulfill a public purpose at the federal level.
In my opinion, in light of these precedents, the expenditure of municipal funds in support of a public commemoration of the military service and sacrifice of a soldier killed while on active duty may be permissible under the pertinent constitutional and statutory analysis. Again, however, reference must be had to all the relevant facts surrounding a particular expenditure.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh