GEBOSKI, PLAINTIFF, v. MONTANA ARMORY BOARD ET AL., DEFENDANTS.

(No. 9,004.)

(Submitted May 21, 1940. Decided June 17, 1940.)

[103 Pac. (2d) 679.]

*Mr. Edwin E. Multz,* for Plaintiff.

*Mr. Harrison J. Freebourn,* Attorney General, *Mr. Lee Metcalf, Assistant Attorney General,* for defendant John W. Mahan, Adjutant General, *Mr. John A. Stagg,* for defendant State Armory Board and members thereof, *Mr. Harold K. Anderson,* for defendants Lewis and Clark County, *Mr. John W. Mahan,* for defendant City of Helena, and *Walter Aiken,* for defendant City of Bozeman.

MR. JUSTICE ERICKSON delivered the opinion of the court.

The plaintiff, a taxpayer of the city of Helena, brings this original proceeding in this court seeking to restrain the defendant Armory Board and its members from performing certain acts regarding the erection of armories in the cities of Helena and Bozeman.

Under Chapter 161 of the Laws of 1939 the Montana Armory Board was created, particularly naming its status to be "a body politic and corporate." Section 2. The board was given certain powers. The powers particularly applicable to this case are as follows:

"Section 4. The Montana armory board shall possess all the powers as a body corporate necessary and convenient to accom-

plish the objects and purposes prescribed by this Act, including the following, which, however, shall not be construed as a limitation upon the general powers hereby conferred:

''(a) To enter into contracts and be contracted with in any matter connected with any corporate purpose, herein defined.

''(b) To borrow money and issue bonds, and to pledge any and all property and income of such board acquired or received as herein provided, to secure the payment of such bonds, and to redeem such bonds.

''(c) To sue and be sued.

''(d) To acquire, hold and convey real or personal property, by gift or purchase for armory purposes.

''(e) To donate such property to the State of Montana if and when all debts which have been secured by such property or by the income thereof, have been paid.

''(f) To purchase sites and buildings or to purchase sites and construct buildings for armory purposes, provided that the board of county commissioners of the county wherein said site or building is to be purchased or a building constructed, shall give their written approval of said purchase or construction.

''(g) To execute leases of buildings and sites to the State of Montana for armory purposes, and in the event of nonpayment of any rents reserved in such leases, to execute leases thereof, to others for any suitable purpose, on such terms as the board may fix. Such leases to the State of Montana shall be subject to appropriations to be made by the legislative assembly, for the payment of rent under such leases. The rent charged the State of Montana shall not be in excess of the amount necessary for the retirement of bonds secured by the property leased to the State, and other expenses incident thereto, including cost of operation.''

On the 21st day of August, 1939, the board adopted a resolution setting up a financial plan to build an armory in Helena at the cost of $200,000, and in Bozeman at the cost of $90,000. In brief the plan is as follows: For the Helena Armory the Works Progress Administration will contribute $52,000; the adjutant general's office some part of $36,000 (amount appro-

priated by legislature for biennium for rebuilding state arsenal) and in addition $125,000 will be raised through the sale of bonds issued on a trust indenture. For the Bozeman Armory the Works Progress Administration will contribute $40,000, and $50,000 will be raised through the sale of bonds. For retiring the bonds issued, the board relies upon two possible sources of revenue (1) renting the buildings to the state, or (2) renting for private or public enterprise.

The plaintiff contends that Chapter 161 contravenes the provisions of the Constitution in ten instances: First: That the Act constitutes an improper delegation of legislative power. The powers given in the Act which the plaintiff claims belong exclusively to the legislature are: (1) Power to select sites, (2) unlimited power and discretion as to size, specifications and design, (3) unlimited power as to amount of money expended, (4) power to determine the need of the armories.

By the very enactment of Chapter 161 (a) the legislature has determined the need of armory facilities and has created this board to perform such acts as may be necessary to accomplish the purpose. (See *Texas National Guard Armory Board* v. *McCraw*, 132 Tex. 613, 126 S.W.(2d) 627.) The provisions relating to the powers are carefully confined to activities of the building and maintenance of armories. The power to determine sites, amounts to be spent, and size do not in this case become an exercise of legislative power since the Act contemplates that the state will not become the owner of the property until or unless donated to the state under the power given in subsection (e) of section 4.

Second: That the Act provides for an appropriation in contravention of sections 33, 34 and 35 of Article V of Constitution. Chapter 161 does not provide an appropriation and therefore could not possibly be in conflict with the above constitutional provisions. The Act merely directs the board to exercise the power to rent to the state of Montana and requires the rental to be no more than the amount necessary to pay the principal and interest on the bonds and other legitimate expenses, such as maintenance, operation, financing, etc.,—retire

the bonds secured by the property. That section (subdivision (g) of section 4) does not bind the legislature to make any appropriation.

Third: That the State Board of Examiners has jurisdiction (c) over the subject matter of Chapter 161 by virtue of section 20, Article VII of the Constitution. Section 20 relates to the Board of Examiners' power to pass on claims against the state. Chapter 161 makes no provision that the Armory Board shall have the leasing power on behalf of the state. The legislature by appropriation may authorize such leases to be made and paid for through the regular channels and the Board of Examiners will be deprived of no power to pass upon the claims for rent which may be presented to the state by the Armory Board.

Fourth: That Chapter 161 makes armories state institutions (d) to be supported by the state under the provisions of section 1 of Article X of the Constitution. That section of the Constitution does not expressly or by implication include the type of corporation created by Chapter 161. Institutions under the constitutional provision relate to those wherein the title of the property is in the state. Chapter 161 expressly puts title in a public corporation separate and apart from the state.

Fifth: That if the armories are not state institutions they (e) will not be tax exempt under section 2 of Article XII of the Constitution. Again this contention does not affect the validity of Chapter 161, but is merely incidental to operation of the plant after construction. The ''public corporation'' created by Chapter 161 is in the same category as a municipal corporation. The purposes are for public benefit the same as in the case of a municipal corporation and we think the constitutional provision is broad enough to exempt the property held by the board, certainly at least so long as the property is used exclusively for armory purposes as provided in the Act.

Sixth and Seventh: That Chapter 161 contravenes sections 12 and 14 of Article XII of the Montana Constitution. Section 12 relates to appropriation limit as to amount and period. Chapter 161 does not bind the legislature to make appropriations

of any nature; consequently this contention is not pertinent here.

Section 14 relates to the method of handling the deposits of (f) state monies. The money raised by the sale of bonds becomes a special fund to be disbursed for the erection of proposed buildings. This money is not derived by taxation and consequently need not be handled in that manner. (*State ex rel. Veeder* v. *State Board of Education,* 97 Mont. 121, 33 Pac. (2d) 516; *State ex rel. Hawkins* v. *State Board of Examiners,* 97 Mont. 441, 35 Pac. (2d) 116.)

Eighth: That Chapter 161 creates an instrument empowered (g) to create a debt against the state and thus contravenes sections 1, 2 and 4 of Article XIII. There is nothing in the Act which obligates the state to be liable for any debt. As before stated, the legislature is not bound to make any appropriation for rental payments, and in such contingency the bondholders have only their remedy of foreclosure upon the property held by the board, no part of which can be, under the terms of the Act, property of the state until the board donates the property to the state free of all indebtedness.

Ninth: That Chapter 161 allows a corporation other than (h) those enumerated in section 2 of Article XV to be created by special law. This section of the Constitution deals with corporations organized for profit. Chapter 161 creates a ''body corporate'' similar to a municipal corporation.

Tenth: That Chapter 161 is an exercise of jurisdiction expressly (i) conferred by sections 1, 2, 3, 4 and 5 of Article XIV of the Constitution. Those sections deal exclusively with the military affairs of the state. Chapter 161 makes no infringement on the conduct of the military affairs of the military department. The state, through the military department, will rent the building from the Armory Board. The legislature has adopted Chapter 161 as a means of making facilities available for the military activities of the state.

The contention (No. 11) that the adjutant general does not have authority to execute leases for and in behalf of the Montana National Guard, and, at least, not to execute leases for

494

longer than two years, does not affect the validity of the statute (Chap. 161). The statute, however, does make provision whereby the board may execute leases to the state of Montana for armory purposes. Rent is to be paid by an appropriation. An appropriation made to the adjutant general's department, such as was made in 1939 (for rental of drill halls, etc.), certainly gives the power to the adjutant general to rent the buildings. As to leases for a longer period than two years, there is nothing before us to indicate that such a plan is contemplated.

Plaintiff's contention No. 12 presents the question: Can the money appropriated by the legislature in 1939 ''for the expenses for additional units and rebuilding state arsenal eighteen thousand dollars'' (for each year of the biennium) be used as a part of the original investment in the armories as proposed by the resolution of the board? It is apparent from reading the Act making the appropriation that the legislature contemplated no such use of the funds appropriated. The appropriation was for the specific purpose of rebuilding the state arsenal, a specific building owned by the state itself, and the further provision for expenses for additional units cannot under any stretch of the imagination be said to contemplate the proposed use here. No part of the funds appropriated by the 1939 legislature may be used as contemplated here.

Other serious constitutional questions arise in connection with the proposed use of the $36,000 fund, but in view of what has been said, we do not deem it necessary to discuss those questions.

We hold that the powers granted by Chapter 161 are constitutional, and the Armory Board and the other defendants herein may proceed in the manner proposed with the exception that no part of the $36,000 may be used in the original investment. The writ then will issue, but only in so far as above stated.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ANGSTMAN and ARNOLD concur.