STATE OF MONTANA, ex rel. ARNOLD H. OLSEN, ATTORNEY GENERAL, Relator and Appellant, v. MONTANA ARMORY BOARD, et al., Defendants and Respondents.
No. 9366.
Submitted May 28, 1954. Decided October 19, 1954.
275 Pac. (2d) 652.

Mr. Arnold H. Olsen, Atty. Gen., Mr. H. Moody Brickett, Mr. William F. Crowley, Asst. Attys. Gen., for appellant.

Mr. William H. Clarke, Helena, for respondents.

Mr. Crowley and Mr. Clarke argued orally.

MR. JUSTICE FREEBOURN:

By complaint, filed July 2, 1953, the State of Montana, plaintiff and appellant, through its attorney general, sought to prevent the Montana Armory Board and the members thereof, defendants and respondents, from conveying certain described real property, referred to as the "Poplar Armory" to the City of Poplar, Montana.

The complaint asked that an alternative writ issue out of the district court preventing such conveyance being made during the pendency of the action, and that such writ, after hearing had, be made permanent.

The temporary writ issued and the defendants filed their answer on August 21, 1953.

After hearing had, the district court, on September 21, 1953, dissolved the temporary writ and ordered "that the said action be, and hereby is, dismissed and that defendants herein have judgment on the pleadings."

From such order and judgment plaintiff appealed.

The state contends that such armory and the land it stands upon are state property, therefore subject to sale and conveyance as provided for by the Constitution and statutes enacted in accordance therewith.

The defendants contend that such armory and the lands upon which it stands are not state property.

The Montana Armory Board owes its existence to and was created by the State of Montana, acting through its legislature. Its members were either appointive officers of the State of Montana, such as the state purchasing agent, or appointees of the governor of Montana.

The employment of the armory board's supervisors, caretakers and other employees, was subject to the approval of the board of examiners of the State of Montana. R. C. M. 1947, sec. 82-201.

All of the armory board's contracts had to be approved by the state board of examiners, and all of its proceedings were subject to examination by the state examiner of the State of Montana, who was required to report the result of such examination to the board of examiners of the State of Montana. R. C. M. 1947, sec. 82-204.

In the beginning the armory board was allowed to enter into contracts; borrow money and issue bonds; acquire, hold and convey real and personal property; "(e) To donate such property to the State of Montana if and when all debts which have been secured by such property or by the income thereof, have been paid. (f) To purchase sites and buildings or to purchase sites and construct buildings for armory purposes, * * *. (g) To execute leases of buildings and sites to the State of Montana for armory purposes, * * *. Such leases to the State of Montana shall be subject to appropriations to be made by the legislative assembly, for the payment of rent under such leases. The rent charged the State of Montana shall not be in excess of the amount necessary for the retirement of bonds secured by the property leased to the State, and other expenses incident thereto, including cost of operation." See Chapter 161, Laws of Montana 1939, p. 386.

When the revenue from the rental of armories was not sufficient to retire armory board bonds, the State of Montana paid off the balance owing by the legislature appropriating: By House Bill No. 250, Laws of Montana 1945, p. 573, the sum of $190,000 from the general fund; and by House Bill No. 229, Laws of Montana 1953, pp. 651, 652, the amount of $40,000 "out of any money in the state treasury".

House Bill No. 229 also provided for the quiet demise and orderly interment of the armory board by the following words: "As soon as can reasonably be done after the retirement of the bonds and the transfer of property as above described, the Montana armory board shall pay its bills and clear its affairs. * * *

"Upon the final closing of its affairs * * *, the Montana armory board shall make a complete report to the governor of the State of Montana, whereupon said Montana armory board shall cease to exist * * *."

The twenty-ninth legislative assembly of Montana, Laws of Montana 1945, p. 573, House Bill No. 250, said that: "Whereas, said Montana armory board has issued four hundred fifty thousand dollars ($450,000.00) of bonds the proceeds of which have been used in building and acquiring the armories, sites, and other property aforesaid, of which bond issue two hundred eighty-four thousand dollars ($284,000.00) now remains unpaid, and

"Whereas, under the provisions of the Acts aforesaid, when all bonded and other debts of said Montana armory board have been paid, all such armories, sites, and buildings are required to be donated and conveyed to the State of Montana, * * *.

"Now Therefore. Section 1. An appropriation of ninety-five thousand dollars ($95,000.00) is hereby made out of any unexpended monies in the general fund of the State of Montana, to the Montana armory board, for each of the state fiscal years of 1945-1946 and 1946-1947, (being a total appropriation for said biennium of $190,000.00) as rental for armory buildings, sites, and other property heretofore leased to the state by said

board under primary leases as provided by Section 3, Chapter 123 Session Laws of Montana of 1941.

"Section 2. This appropriation is made upon the expressed condition that all the money appropriated to said board by this act shall be applied in payment of any outstanding Montana armory board bonds. * * *"

The armory board was created with the express understanding and direction that it would "donate such property [armories] to the State of Montana if and when all debts which have been secured by such property or by the income thereof, have been paid." See Chapter 161, Laws of Montana 1939, p. 386.

The State of Montana, through its legislature, appropriated $190,000 in 1945, from the general fund of the State of Montana, "upon the expressed condition that all the money appropriated * * * shall be applied in payment of any outstanding Montana armory board bonds." This appropriation was made with the understanding that "all such armories, sites, and buildings are required to be donated and conveyed to the State of Montana * * *." See House Bill No. 250, Laws of Montana 1945, p. 573.

The authority, under which the armory board seeks to convey such armory, and the land upon which it is situated to the City of Poplar, is known as House Bill No. 229, as enacted by the thirty-third session of the Montana legislature, Laws of Montana 1953, pp. 651, 652.

Such part thereof as is pertinent here, is as follows:

"House Bill No. 229. An Act to Appropriate Money for the Retirement of Montana Armory Board Bonds: Providing for the Retirement of Montana Armory Board Bonds and the Disposition of the Assets of the Montana Armory Board, and the Abolishment of Said Montana Armory Board. * * *

"Now Therefore be it Enacted by the Legislative Assembly of the State of Montana:

"Section 1. That there be hereby appropriated out of any money in the state treasury not otherwise appropriated the sum of forty thousand dollars ($40,000.00) to the Montana armory

board, for the sole purpose of retiring all of the outstanding bonded indebtedness of said board.

"Section 2. Immediately upon the retirement of said bonds the Montana armory board shall execute, by its chairman, duly attested by its clerk, good and sufficient deeds of conveyances of title as follows:

"(a) To the city of Poplar, Montana, the premises located in that city known as the 'Poplar armory,' together with all the tenements, hereditaments and appurtenances thereto belonging, providing however, that said deed shall reserve unto the State of Montana [the right to use it for national guard purposes free of charge] * * *

"(b) To the State of Montana, all other realty owned by said board of every description, including the 'state arsenal building,' Helena, Montana, and the 'Bozeman armory,' Bozeman, Montana, together with all the tenements, hereditaments, and appurtenances thereto belonging, without reservation or exception."

Not only did House Bill No. 229, on the face of it, direct the armory board "immediately upon the retirement of said bonds * * * [to] execute * * * good and sufficient deeds of conveyances of title * * * To the city of Poplar, * * * [of) the 'Poplar armory' '' in total disregard of the views of previous legislatures, but such bill appropriated the further sum of $40,000 "out of any money in the state treasury" of the State of Montana, "for the sole purpose of retiring all of the outstanding bonded indebtedness of said board."

There can be no doubt but that the Montana Armory Board ██ is part and parcel of the government of the State of Montana; and that in acquiring land and armories it acted for and took title thereto as an arm and agency of the State of Montana.

The State of Montana brought such armory board into the world undoubtedly to take advantage of gifts of money offered by the federal works progress administration. See Geboski v. Montana Armory Board, 110 Mont. 487, 103 Pac. (2d) 679.

The State of Montana supervised and controlled such armory board's entire life.

350

It was the State of Montana's money that paid off the bonded indebtedness of such armory board, which debt constituted the money necessary to buy the sites for and build such armories; and it was the State of Montana that brought to an end the existence of such armory board, so, like the Arab, it could fold its tent and silently steal away.

The Poplar armory is the property of the State of Montana, and the land upon which it stands is Montana state land.

House Bill No. 229, insofar as it permits the armory board to ▉ convey the Poplar armory, and land upon which it is situated, to the City of Poplar, is unconstitutional and, therefore, inoperative and of no force or effect.

It is unconstitutional because it violates Article XVII, section 1, of the Montana Constitution, which in part provides:

"All lands of the state that have been, or that may hereafter be granted to the state by congress, and *all lands acquired by* gift or *grant* or devise, *from any person or corporation, shall be public lands of the state,* and shall be held in trust for the people, *to be disposed of as hereafter provided,* for the respective purposes for which they have been or may be granted, donated or devised; and *none of such land,* nor any estate or interest therein, *shall ever be disposed of except in pursuance of general laws* providing for such disposition, *nor unless the full market value* of the estate or interest disposed of, to be ascertained in such manner as may be provided by law, *be paid or safely secured to the state; * * *."* Emphasis supplied.

So that the Roosevelt County records shall show a proper chain ▉ of title, the armory board should convey the paper title of such armory and land to the State of Montana.

The disposition of such armory and land lies within the au- ▉ thority of the board of land commissioners consisting of the governor, superintendent of public instruction, secretary of state and attorney general, who "have and exercise general authority, direction and control over the care, management and disposition of all state lands." R. C. M. 1947, sec. 81-103.

For the reasons stated the judgment of the district court is

reversed and the cause remanded to such court with directions to enter judgment in accordance with the views set forth in this opinion.

MR. CHIEF JUSTICE ADAIR and MR. JUSTICE BOT-TOMLY concur.

MR. JUSTICE ANGSTMAN: (dissenting).

The majority opinion is based upon the erroneous notion that the armory building at Poplar and the land upon which it stands is state property. If that were so, it would have been unnecessary for the legislature to provide, as it did, that when the debt secured by the property is paid the property should be donated to the State of Montana. No one can be the donee of property which he already owns. We have already held that the property does not belong to the state until the board donates it to the state, debt free. Geboski v. Montana Armory Board, 110 Mont. 487, 103 Pac. (2d) 679.

It is true that the original plan was to have the property donated to the State of Montana, R. C. M. 1947, sec. 82-207; Chapter 161, Laws of 1939; House Bill No. 250, Laws of 1945, p. 573, and this is what was done as to other armory buildings in the state. I know of no constitutional provision that prohibits the legislature from changing the plans before the state becomes the owner of the property, as it did in the case of the Poplar armory.

The record reveals that the cost of the Poplar armory was about $72,000, a part of which was to be paid by the Federal Government and the balance to be paid by the City of Poplar by the annual payment of $2,472.50 as rental for a period of twenty years, $600 of which was received from the adjutant general's department as rental and credited to the City of Poplar and the balance of $1,872.50 to be paid directly by the City of Poplar.

The lease provided specifically: "That said rental is mathematically calculated and estimated to repay to the Montana Armory Board in a period of twenty years the actual cost of

construction of the armory leased herein and administration expense of the Montana Armory Board pertaining to and connected therewith together with four percent interest per annum from the first day of July, 1940. The annual rental in the sum of $600.00 to be paid by the State of Montana for the military use of said armory has been first deducted in determining the rental of the lessee herein. The estimated cost without interest of the Montana Armory Board of said armory upon which calculations herein are made is $28,800.00. That in event that the costs of construction and administration pertaining to said armory upon completion thereof as certified to by the Chairman of the Montana Armory Board is more or less than the estimated cost thereof as certified to by the Chairman of the Montana Armory Board is more or less than the estimated cost thereof as set out herein, in such event the rental to be paid by the lessee herein shall be increased or decreased in direct proportion upon the basis of the mathematical calculations described herein.'' The lessee likewise agreed to make all repairs, alterations and installations.

It is a fallacy to hold, as does the majority opinion, that the State of Montana's money paid off the bonded indebtedness of the armory board so far as that indebtedness was enhanced by the cost of the Poplar armory.

House Bill No. 229, Laws of 1953, p. 651, recites that the City of Poplar paid $25,693.35 toward reduction of the armory board's indebtedness. Just how much the Federal Government donated to the $72,000 project the record does not reveal. The several appropriations made by the legislature were for all the armory projects combined and it is therefore impossible on the record before us to determine how much the state paid for the Poplar armory but whatever amount it paid seems to have been fully recognized by House Bill No. 229, because the legislature saw fit to reserve to the State of Montana the free use of the Poplar armory for a period of five years and to have the use of it thereafter on such terms and conditions as may be agreed upon by the adjutant general and the City of Poplar.

Since the property never belonged to the State of Montana, and since the City of Poplar paid more than the State of Montana in discharging the indebtedness incurred by the board in acquiring the property, the legislature did not, in my opinion, violate any constitutional provision in deeding the property to the City of Poplar. I think the district court was right in entering judgment on the pleadings for defendants and that the judgment should be affirmed.

MR. JUSTICE ANDERSON:

I concur in the foregoing dissenting opinion of MR. JUSTICE ANGSTMAN.