STATE OF MONTANA EX REL. A. A. WERNER, RELATOR, *v.*
THE DISTRICT COURT OF THE FIRST JUDICIAL DIS-
TRICT OF THE STATE OF MONTANA, IN AND FOR THE COUNTY
OF LEWIS AND CLARK ET AL., RESPONDENTS.

No. 10588

Submitted May 15, 1963. Decided May 27, 1963.

382 P.2d 824.

Stanley P. Sorenson (argued orally), Charles E. Snyder (argued orally), Helena for relator.

Forrest H. Anderson, Atty. Gen., Alfred B. Coate, First Asst. Atty. Gen., (argued orally), Helena, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Original Proceeding:

On April 26, 1963, relator filed an affidavit and application praying for an alternative writ of mandate or such other and further relief as appeared meet and equitable in the premises. The application disclosed that relator applied for an alternative writ of mandate to the district court of Lewis & Clark to be directed to the Department of State Lands and Investments of the State of Montana, and its governing board, the members and commissioner thereof, to require them to confirm a sale of the Poplar Armory to relator. The district court refused to issue the requested alternative writ and relator averred that the application presented a prima facie right in him to have the writ issued and further asserted that he had no plain, speedy or adequate remedy in the ordinary course of law nor any right of appeal.

From the allegations of the application and statements of

counsel upon the ex parte hearing it became apparent that additional information and further consideration would be necessary before a determination could be made as to the propriety and type of relief which might be available to relator, and to that end this court issued an order joining as respondents in this proceeding the same respondents named in the district court proceedings; requiring the Department of State Lands and Investments to certify to this court copies of its minutes covering the purported sale of the Poplar Armory; restraining all respondents from any further proceedings in connection with the sale of the Poplar Armory until the further order of this court; and continuing the hearing in order to permit all respondents to appear and show cause, if any they had, why an appropriate writ should not be issued providing adequate relief to the relator.

Upon the date set for the continued hearing the respondents joined by our order appeared by answer and the minutes were certified to this court as ordered.

There is no dispute as to these facts: The State Board of Land Commissioners, hereinafter referred to as the Board, directed the Commissioner of State Lands and Investments to put the Poplar Armory up for sale and a so-called auction sale was held for the purpose of receiving offers for the purchase on October 18, 1962, at which time relator made the high bid of $15,100. The matter came before a special meeting the Board on November 5, 1962, at which time relator and his counsel were present. Protests to the sale raised by the City of Poplar and other interested citizens were before the Board. A motion was made to reject the bid of relator but no action was taken thereof. A motion was made and unanimously carried to allow the City of Poplar, as tenant, the opportunity to meet the bid submitted by relator. Relator stated to the Board that the City of Poplar had the opportunity to meet relator's bid at the time of the sale but had failed to do so.

At the regular meeting of the Board on November 14, 1962,

motion was made and unanimously carried that the minutes of the special meeting of November 5, 1962, be rescinded and that the Poplar Armory be again offered for sale, under the direction of the Attorney General's office; that all former bids be rejected and that it be sold to the highest bidder.

At their meeting on April 10, 1963, requests were received from the City of Poplar and the Fort Peck Tribal Council to purchase the Poplar Armory, each application containing a guaranteed bid of $15,100. A motion was made that the request to purchase be accepted and that the Commissioner be directed to publish notice of sale and hold a sale pursuant to law; that the sale be restricted to public corporations or agencies, or political subdivisions of this state. This motion was passed with one abstention.

The Commissioner then published a notice of sale which included this proviso: "Sale of this property is restricted to public corporations, agencies or political subdivisions of this state."

Relator's position is that the facts set forth in the affidavit and application in the district court disclose:

(1) That the Board approved the amount of relator's bid in that it did not determine that the sale would be disadvantageous to the State and that it was without any discretion other than to confirm the sale to the relator;

(2) A prima facie case that the Department of State Lands and Investments acted arbitrarily and capriciously in the sale and contrary to the duty of the office as promulgated by our laws;

(3) That the Board never intended to hold a bona fide public sale as advertised, that it was merely an attempt to superficially comply with the law in hopes that the City of Poplar would be the high bidder or match any high bid that might be made by the public;

(4) And that by reason thereof the district court erroneously refused to assume jurisdiction and determine the merits of the application for the alternative writ.

The Board's position is that the relator's legal rights have not been violated, and that this court may not grant the relief requested herein.

Because the Poplar Armory is now, and has been for some years, a controversial subject we shall go into more detail than we ordinarily would. In 1953, an action was instituted by the Attorney General of Montana seeking to prevent the Montana Armory Board from conveying the Poplar Armory to the City of Poplar. See State of Montana ex rel. Olsen v. Montana Armory Board, 128 Mont. 344, 275 P.2d 652. These proceedings were brought about by the enactment of House Bill 229 by the 1953 Session of the Montana Legislature which provided for such conveyance. The opinion of this court held that the Poplar Armory was the property of the State of Montana, and that insofar as House Bill 229 permitted the Armory Board to convey the Armory to the City of Poplar it was unconstitutional because it violated Art. XVII, § 1, of the Montana Constitution. It further directed that the Armory Board convey the paper title of such Armory and land to the State of Montana and stated that the disposition of such Armory and land lies within the authority of the Board of Land Commissioners. The record in that case disclosed that the cost of the Poplar Armory was about $72,000, part of the cost was paid by the Federal Government and the balance was to be paid by the City of Poplar by annual net rental payments of $1,872.50 for a period of twenty years. House Bill 229 recited that the City of Poplar paid $25,693.35 toward reduction of the Armory Board's indebtedness, but how much was paid with Federal funds or by the State of Montana does not appear.

Before disposing of this application, in view of the controversial nature of the matter, we shall discuss certain matters appearing in the record before us with the thought in mind that further litigation may be avoided.

The management and sale of state lands are entrusted to the State Board of Land Commissioners under our Constitution,

Art. XVII, §§ 1, 2 and 3, and the statutes appearing in Title 81 of the 1947 Revised Codes.

Section 81-907, R.C.M.1947, provides:

*"Board to decide when to hold sales and what lands to sell.* The state board of land commissioners is hereby vested with the power and authority to decide when sales of state lands are to be held and what state lands are to be offered for sale, subject to the limitations of this act, and as the best interests of the state may appear to require; provided, however, that as a general rule no sale of state lands shall be held unless applications have been made for the purchase of lands within one (1) county by prospective purchasers representing at least twelve (12) families."

When sales are authorized notice must be given as provided in section 81-910, R.C.M.1947, and section 81-918, R.C.M.1947, provides:

*"Approval or disapproval of sales.* All sales of state lands, and all sales of timber on state lands, shall be subject to the approval and confirmation by the state board of land commissioners, and no sale shall be deemed completed until after such approval and confirmation. The board shall have the power and it shall be its duty to disapprove any sale which in its opinion would be disadvantageous to the state."

The minutes of the Board do not disclose that the bid of relator was approved and confirmed. We cannot subscribe to the contention of relator that because the Board granted the tenant, the City of Poplar, the opportunity to meet the bid of relator, that thereby it in fact approved the amount of relator's bid. The minutes reflect that relator, in discussions with the Board, was willing to grant concessions, apparently to meet the protests then before the Board. A motion was made to reject the sale to relator and while no action was taken thereon, the subsequent approved motion to permit the tenant City of Poplar the opportunity to meet the bid in our opinion cannot be construed in the manner asserted by relator.

It is apparent that nine days later when the Board met on November 14, study had been given to the provisions of section 81-912, R.C.M.1947, which provides that the lessee may meet the high bid and be given the preference of purchasing, wherein the use of the term "but shall if bidding" seems to clearly indicate that such meeting of the high bid must be at the time of the sale, while bidding is in progress. The Board rescinded its action of November 5 in granting the tenant such opportunity and rejected all former bids and directed a new sale.

We do not believe that the provisions of section 81-918, supra, require the Board to set forth specifically in their minutes why a sale is deemed disadvantageous to the state when it rejects all bids. Discretion is vested in the Board throughout the entire chapter on behalf of the best interests of the State of Montana, not only in this section but in section 81-907, supra, again in section 81-913, and various other sections contained in Chapter 81. In view of these provisions of our statutes we cannot say that the Board acted arbitrarily or capriciously.

As to the contention of the relator that the Board never intended to hold a bona fide sale the facts certainly do indicate that the Board was endeavoring to make it possible for the City of Poplar to acquire the Armory building. In view of the history of this building it cannot be said that such attitude is not to be commended rather than deplored. The citizens of Poplar invested a considerable amount of their tax revenues in the erection of the building, apparently under the impression that eventually the City would secure title to it, but such has not been the case. The building has been often referred to as a "white elephant" and the minutes of the Board show that the State Board of Examiners has requested that the Board sell the building.

Be that as it may, the Board is obliged to follow the law as it is written and this court is obliged to see that it does so, what-

ever personal views members of either body might entertain as to what they or we would like to see happen.

This brings us to the sale advertised for May 15, 1963, which proceeding was stayed until the further order of this court. There is no provision in the law permitting a restriction such as contained in the notice of sale as heretofore mentioned.

Our attention has been directed to the last two paragraphs of section 81-908, R.C.M.1947, as authorizing this procedure, but in our opinion such authority does not exist. These last two paragraphs were added to section 81-908 by Chapter 95, Laws of 1949, and the title of that Act reads:

"An Act to Amend Section 1805.71, Revised Codes of Montana, 1935, Relating to Persons Eligible to Purchase State Lands, and the Quantities Which May be Purchased, and Providing That Any Sovereign State of the United States and Any Trustee or Public Corporation or Agency or Political Subdivision Thereof, Duly Authorized by Such Sovereign States, May Purchase and Hold State Lands; Limiting the Quantity Which May be Purchased and Defining the Purpose for Which the Same May be Purchased and Validating Any Sales of State Lands Heretofore Made to Sovereign States of the United States Eligible Under the Provisions of This Act."

Clearly the amendments were inserted to expand the class of buyers since by the first paragraph of section 81-908, they were limited to citizens of the United States, those declaring their intention to be such, or corporations organized under the laws of this state. The amendment, so far as pertinent here, added "public corporation or agency of such state created by such state as an agency or political subdivision thereof." The third paragraph is a validation section to ratify and confirm sales theretofore made.

Section 81-913, R.C.M.1947, provides:

*"Board may prescribe additional rules and regulations.* The state board of land commissioners may prescribe such addi-

tional rules and regulations for the conduct of these sales as in its judgment the interests of the state may demand."

In our opinion this refers to general rules and regulations for the conduct of sales and cannot be interpreted so as to permit the Board to adopt rules and regulations for each particular sale.

A sale made pursuant to this notice as published, in our opinion, would be clearly illegal and void.

Insofar as the contentions of the relator are concerned, this brings us to the assertion that the district court erroneously refused to assume jurisdiction. From what we have heretofore said there was not a clear legal right to the relief which he sought nor a violation of duty on the part of the Board and the members thereof sought to be enforced. Mandamus lies to compel action, but not to control discretion. The action was filed in the district court on December 10, 1962, and the district court assumed jurisdiction, considered the application and on December 13, 1962, in the exercise of its discretion, refused to grant an order for the issuance of an alternative writ of mandate. With the exercise of judicial discretion we cannot interfere.

What the future holds for the Poplar Armory remains in the lap of the Board, and if it is still desired that a sale be made it must be held strictly in accordance with the prevailing law as interpreted herein.

By reason of what we have heretofore stated, relator's application for an alternative writ of mandate or any other form of relief in the premises is denied.

While the pleadings in this cause raise no issue as to the notice of sale for May 15, 1963, a companion application has been filed seeking an alternative writ of prohibition, being cause No. 10594, entitled State ex rel. A. A. Werner, Relator, v. The Department of State Lands & Investments of the State of Montana, et al., being the same respondents as were ordered named

as respondents in the cause here. This cause has not yet been heard in view of our order staying all proceedings.

There are no additional matters contained in that application except that it pertains solely to the sale scheduled to have been held on May 15, 1963, and which we have fully discussed heretofore. There would appear now to be no reason to hold a hearing thereon because all facts in connection therewith are already before us in this proceeding. The relator in cause No. 10594 is clearly entitled to the relief therein sought and to clarify the matter rapidly it can be granted here. Therefore the order heretofore issued herein staying any further proceedings in connection with the sale of the Poplar Armory under the notices of sale on October 18, 1962, or the sale scheduled to have been held on May 15, 1963, is made permanent, but in all other particulars it is dissolved.

MR. JUSTICES CASTLES, JOHN C. HARRISON and DOYLE, concur.